## ISRAEL, Respondent, v. ISRAEL, Appellant.

### St. Louis Court of Appeals, December 27, 1904.

1. **SLANDER: Actionable Words Per Se.** Falsely and maliciously to charge a woman with being unchaste is actionable *per se* under section 2863, Revised Statutes of 1899.

2. ———: ———: **Malice.** From the false utterance of words actionable *per se*, the law presumes malice and it is not necessary to prove actual malice or ill-will in order to recover compensatory damages for such slander.

3. ———: ———: ———: **Evidence.** In an action for slander, where the issue was whether the defendant falsely spoke of the plaintiff actionable words, the question of the defendant's intention and motive was properly excluded from the consideration of the jury on the issue of the plaintiff's right to compensative damages.

4. ———: ———: **Explanatory Facts.** When one uses actionable words concerning another with explanatory statements, or under circumstances, which make it clear the speaker does not intend his words in their natural and precise sense, and his auditors understand he does not, the words cease to be actionable.

5. ———: ———: **Mitigation.** If slanderous words are spoken under excitement and passion, the fact may be given in mitigation of damages as going to show want of actual malice.

6. ———: ———: **Exemplary Damages.** In an action for uttering actionable words, the court properly allowed the jury to consider the defendant's motive and intention on the issue of plaintiff's right to recover *exemplary* damages.

7. ———: **General Issue.** In an action for slander, the defense that the actionable words were not meant nor understood to be used in their natural sense, is allowable under the general issue.

8. ———: **Actionable Words: Explanatory Facts.** Where the utterer of the actionable words had time for his passion to cool after the alleged provocation before uttering them, and made no explanatory statements, and they were understood by a hearer to be used in their natural sense, the defense that the actionable words were not used in the actionable sense, but under excitement and provocation, was properly not allowed.

9. ———: ———: **Burden of Proof.** In an action for slander, the words in the first instance are to be taken in their natural sense, and the burden is on the defendant to show they were spoken innocently and that his hearers knew he did not intend the slanderous meaning.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough,* Judge.

AFFIRMED.

*Geo. W. Lubke* and *Geo. W. Lubke, Jr.,* for appellant.

(1) None of the language of the defendant charged in the petition was actionable at common law. "Words, to be actionable, when spoken of a person not in any office, trade or profession, must imply the imputation of an offense which would subject the offender to some infamous crime." Nelson v. Musgrave, 10 Mo. 648. (2) Words imputing adultery or unchastity were not actionable at common law, unless they were spoken of one holding an office or carrying on a trade or profession. Odgers on Lible and Slander (2 Ed.), p. 65; Townshend on Slander and Libel (4 Ed.), sec. 172; Starkie on Slander and Libel (5 Ed.), 141 and 144. The latter became actionable in this State by the statute, which declares that "It is actionable to publish falsely and maliciously, in any manner whatsoever, that any person has been guilty of fornication or adultery." R. S. 1889, sec. 2863; Maberly v. Preston, 8 Mo. 462; Stuber v. Wenzel, 19 Mo. 513; Hudson v. Garner, 22 Mo. 423; Hillebrand v. Dreinhoefer, 13 Mo. App. 586. (3) The language must not only have been false, but must have been spoken maliciously. Unless the evidence shows this, there is a failure of proof to meet the definition given by the statute. Bridgman v. Armer, 57 Mo. App. 528. If words are not used in an actionable sense, the plaintiff should be nonsuited. 2 Greenleaf on Ev., sec. 423. If it appears that the words were spoken through

Israel v. Israel.

heat and passion as mere terms of abuse, and were so understood by the persons present, there is no right of action. Starkie on Slander and Libel (5 Ed.), 139; Newell on Slander and Libel, 33-54. (4) Although the words are actionable *per se,* it also appears that they were used as terms of abuse and reproach, and were not intended as the truth, and were understood by the hearers as mere terms of abuse, then the jury should be instructed to find for the defendant. Bridgman v. Armer, 57 Mo. App. 531; McKee v. Ingalls, 5 Ill. 30; Haynes v. Haynes, 29 Me. 249; Quinn v. O'Gara, 2 E. D. Smith (N. Y.), Com. Pleas Reports, 388. Fawsett v. Cook, 48 Md. 504; Ritchie v. Stenius, 73 Mich. 563; Golberg v. Gobbertine, 46 La. Ann. 1303; 28 L. R. A. note at p. 724. Defendant's theory of the case—that, what he did say was not said maliciously—should have been submitted to the jury as "a fundamental right in the trial." Galbroath v. Carnes, 91 Mo. App. 515; Hester v. Packing Co., 84 Mo. App. 451.

*Ernest E. Wood* for respondent.

Where the words spoken are in themselves actionable, no proof of malice is necessary; the law will imply it. Estes v. Antrobus, 1 Mo. 197; Weaver v. Hendrick, 30 Mo. 502; Pennington v. Meeks, 46 Mo. 217; Hall v. Adkins, 59 Mo. 144; Wood v. Hilbish, 23 Mo. App. 339; Baldwin v. Fries, 46 Mo. App. 288. The law is now settled that in actions of slander the words are to be understood in their popular sense. Hudson v. Garner, 22 Mo. 424.

### STATEMENT.

Action to recover damages for the alleged utterance to and concerning the plaintiff, in the presence of other persons, of the following false and slanderous words:

"You God damned son of a bitch, you turned your husband out as a pauper; you wanted to get rid of him, you didn't take care of him. All that was the matter with you was that you were tired of him. He got too old for you; he couldn't work and wasn't good any more. You are nothing but a damned dirty whore and a son of a bitch. Your husband is as sane as I and you know it. I know what you are."

It is averred in the petition that when the above language was spoken by the defendant, plaintiff's husband was insane and confined in an insane asylum, and is averred, too, that in speaking the words the defendant meant and was understood by plaintiff and the bystanders to accuse the plaintiff of being unchaste.

The answer was a general denial.

Plaintiff and Joseph Israel, brother of the defendant John Israel, were married in 1869 in their early youth and lived together until 1901, when Joseph became insane from paresis. Prior to that affliction the plaintiff was visited with blindness. This calamity befell her in 1898 and she has been totally blind ever since. It is admitted that enmity existed between her and the defendant's family for several years preceding the insanity of Joseph Israel, and that for four or five years before the occasion when the slander is said to have been spoken, neither the defendant nor his wife had visited plaintiff's home or had anything to do with her except to make a visit at the house to see Joseph Israel while he was growing insane and, it seems, another visit when plaintiff wished to consult the defendant about Joseph's condition. After Joseph's mind gave away he was placed first in the Baptist Sanitarium in St. Louis and later, in November, 1901, was transferred to the city hospital, where he died in March, 1903. There was evidence that the plaintiff visited him frequently, looked after his comfort and welfare as well as she could and was in no way guilty of casting him off or

neglecting him. On January 3, 1902, the defendant, his wife and Mrs. Frank Israel, the wife of a cousin of the defendant, called at the hospital to see Joseph Israel. The defendant thought his insane brother was shabbily and insufficiently clothed and in a disgraceful and suffering state from lack of proper clothing. After leaving the hospital, the defendant and his companions repaired to the home of Frank Israel where they ate lunch, and defendant and his wife then went to the plaintiff's home, four or five blocks away. On reaching the house the defendant knocked at the door and plaintiff asked who was there. She soon recognized the defendant's voice and opened the door, asking at the same instant who was with the defendant, the latter responding that his wife was with him. Those remarks passed as the defendant and his wife entered the house and what followed immediately is thus related by the plaintiff. The defendant asked if she knew where he had been and said he had been to see Joe, the insane brother and husband. Plaintiff asked how defendant found Joe, whereupon the defendant said:

"How did I find him? God damn you, like a pauper; he was a disgrace and a shame for any person to see; he had no clothes on, he had no shoes, no socks, no underwear; his pants were so filthy and so greasy that you could take a knife and scrape the grease and dirt off them. His coat and vest was an old cast-off coat and vest three times too big for him, and an old washed-out shirt and next to that he had nothing but an old rag of a handkerchief. He was the worst dressed man down there. God damn you, you sent him out like a pauper. I know what you are, you have never been any good. I know you; you have been nothing but a damned whore. He is as sane as I am. All is the matter with you, you damned son of a bitch, you damned bastard, you damned whore, he got too old for you, he was no good, you turned him on to the street."

According to the plaintiff and a servant, Albertine

Miller, the defendant accompanied his foul language with violent gestures, pounding the table and shaking his fist in plaintiff's face. Other persons living in the neighborhood heard profane and violent language, but none of them except the plaintiff and Miss Miller caught the epithet impunging plaintiff's chastity. The evidence tends to prove that the shock plaintiff received by the violence of the defendant's conduct and the slanderous charges he uttered, laid her up with nervous prostration and sleeplessness, her illness continuing until the trial, with small hope of recovery. Miss Miller said the defendant was angry while speaking to the plaintiff and that she (the witness) did not believe his charge that the plaintiff was unchaste, because she (the witness) knew the charge was false. The defendant flatly denied speaking any words against plaintiff's chastity, but admitted upbraiding her for not sending her husband enough clothing. Defendant denied calling plaintiff a whore, or any other epithet, denied telling her she wanted to get rid of her husband, or did not take care of him, was tired of him, or that he was too old for her, or could not work, and was not good any more. He acknowledged using profane words, but not regarding the plaintiff, and swore the language he used was substantially as follows:

"Now nobody cares a damn for him, he can't do you any more favors—the poor devil, when he was here he done more favors than anyone in the neighborhood—where is his clothes, anyhow—for Christ's sake why don't you have them out there—he don't cost you anything out there—as little as you have got to do to see he has his clothes out there—I know he has got plenty of them—it is no good to you."

The instructions allowed a verdict for the plaintiff only on a finding that the defendant spoke the words averred in the petition which charged the plaintiff with being unchaste, and told the jury that the accusations of neglecting her husband, desiring to get rid of him,

or casting him off, would not entitle the plaintiff to a verdict. This instruction was requested by the defendant and refused:

"The jury are further instructed by the court that to entitle plaintiff to recover in this case, it is necessary that the jury should believe and find from the evidence, and all the circumstances shown by the evidence, that the defendant, by the language spoken by him in the interview between him and the plaintiff on January 3, 1902, meant to accuse the plaintiff with being unchaste and that said language was so understood by the persons who heard the same. If the jury do not so find, then they will render a verdict for the defendant. And if the jury, from the evidence and circumstances in evidence, believe that the words spoken by defendant were uttered by him in anger, as terms of abuse and reproach to the plaintiff and were not intended as the truth, and were understood by the hearers as being mere terms of abuse uttered in anger, and not intended to charge the plaintiff with unchastity, then the jury should find for the defendant."

On the question of malice, the court instructed that the words "you are a whore" were slanderous in themselves and the law implies malice from them, rendering it unnecessary for the plaintiff to prove express malice if those words were spoken of her in the presence of others; also that malice does not consist alone in personal spite or ill-will, but exists in law whenever a wrongful act is intentionally done without just cause or excuse, and that the motive or purpose of the defendant in speaking the words charged, if he did speak them, could only be considered as affecting the punitive damages claimed and not as bearing on the actual damages. The defendant requested and the court refused a charge in substance as follows: That if, on a consideration of all the facts and circumstances in evidence, the jury believed the defendant did not maliciously say what he was accused of saying to the plaintiff, they

should find the issues for him. The instructions on the measure of damages allowed compensative damages for the mental anguish endured by the plaintiff and injury to her good name and character, and exemplary damages if the slander was willfully and maliciously uttered. In this connection the jury were told that if they found the plaintiff's good name in the community was not affected by what the defendant said, she was not entitled to recover any damage for injury to her reputation.

The jury returned a verdict for $1,270 compensatory damages, assessing no punitive damages. Judgment was entered accordingly and the defendant appealed.

GOODE, J. (after stating the facts).—The errors assigned on this appeal relate exclusively to the rulings below on the requests for instructions to the jury. No special damage was stated to have attended the false charges in regard to the plaintiff's treatment of her insane husband, nor was any special damage proved to have resulted from anything the defendant said. The charges regarding her behavior to her husband were not actionable without such proof, and, therefore, were withdrawn from the jury's consideration. But the imputation against the plaintiff's chastity, if false and uttered maliciously, was actionable, *per se* by force of our statute. [R. S. 1899, sec. 2863; Hudson v. Garner, 22 Mo. 423.] It follows that if the defendant was proved maliciously to have made a false imputation of that kind against the plaintiff, he was liable without proof that damage resulted, as the law presumes damage from the speaking. [Hudson v. Garner, supra; Hillebrand v. Dreinhoefer, 13 Mo. App. 586; Newell, Slander & Libel (2 Ed.), chap. 26, sec. 1.] The law presumes or implies malice, too, from the false utterance; the only malice that is requisite to make out a case for compensative recovery. [Callahan v. Ingram,

122 Mo. 355; Buckley v. Knapp, 45 Mo. 161.] In this State malice is held to be the gist of an action for slander; but it is held also that falsely uttering actionable words draws down on the speaker the legal implication of malice and dispenses with express proof of it. These rules savor somewhat of technicality and legal fiction, but are only a way to a just result; namely, affording a party wronged by the false utterance of another, compensation for his injury without regard to whether or not spite or ill-will was in the heart of the speaker. No mischief may have been intended when the words were spoken; but the speaking was intentional; and, if the words were false and of slanderous effect, a wrongful act was intentionally done. That constitutes malice as the law understands the word; for voluntarily doing or saying something, without just cause or excuse, which is likely to injure another, shows a spirit lacking in proper regard for social duty and the rights of others, even when done without particular ill-will. These observations seem rather abstract and remote from the present case; for the evidence goes to show that if the defendant addressed the plaintiff with the epithet impeaching her chastity, he was malicious in fact as well as in law. Ill-will and hatred distinctly appear as the concomitants and, indeed, the spring of his accusation. He attempted neither to justify the charge by showing it was true, nor to palliate it by showing he had good cause to believe it was true, or that he uttered it when excited by rage, or used the epithet without intending the meaning it naturally conveys. His defense was that he did not utter it at all. The main issue, therefore, was whether or not the defendant spoke the slanderous words in the hearing of a third person. The jury found he did, and this finding entitled the plaintiff to compensation for the injury entailed, regardless of whether there was actual malevolence in the defendant's feeling towards the plaintiff or not. [Callahan v. Ingram, supra; Jones v. Murray, 167

Mo. 25.] As exemplary damages were asked, the defendant's motive and feeling became important, as they would indicate whether actual malice inspired his conduct and the extent of the punishment he merited. [Callahan v. Ingram, supra; Jones v. Murray.] In those cases and many others, it was said, in effect, that a slanderous intention and motive become important on the question of mitigating the exemplary damages to be imposed by way of punishment, but not to take away or diminish a plaintiff's right to be fully compensated for the injury he suffered from the defendant's tortious language. If the language of the defendant had been of a kind which enjoys a qualified privilege, a different rule would apply, and it then would have been necessary to prove actual malice. The rulings on the requests for instructions to the jury concerning malice, at the trial of the present case, conformed to the law as it is laid down in the books. The given instructions permitted the jury to take account of the defendant's motive in making the false accusation against the plaintiff's chastity, in passing on the inquiry of whether his behavior was of a turpitude deserving more punishment than would result from awarding compensation to the plaintiff, but not in determining whether she ought to be compensated. No punitive damages were given, and we are not called on to review the instructions in regard to them. We hold there was no error in excluding from the jury's consideration the question of defendant's intention, motive and express malice on the issue of her right to compensative damages.

The defendant's counsel insist they were entitled to the instruction requested, submitting the question of whether the defendant, if he spoke the slanderous words, did so as mere abuse, neither intending to accuse the plaintiff of being unchaste, nor being understood in that sense by his auditors. That instruction was inaccurately drawn, as will be shown below. But

as the instruction given at plaintiff's request, that defendant's motive and intention were important only on the issue of punitive damages, might have told prejudicially against this theory of defense in the particular case, though sound as a general statement of the law of damages in slander cases, we will first inquire if there was any substantial basis in the evidence for such a defense. And herein it is important to look into the decisions on the subject to ascertain with as much certainty as we can, the circumstances in which the defense that an apparent calumny was not, in truth, caluminous, because not intended nor understood to be, has been allowed. We glean from the decided cases that the sense in which words ordinarily actionable were spoken, may become important in a slander suit in two ways: either as constituting an absolute defense, or to diminish damages. Actionable words may be uttered concerning a party with such explanatory statements, or in connection with such facts, as make it clear the words were neither used nor taken by listeners in their actionable sense; in which case they lose their actionable quality and a party suing on them can not recover. [Trimble v. Foster, 87 Mo. 49; Hall v. Adkins, 59 Mo. 144; Bridgman v. Armer, 57 Mo. App. 528; Richey v. Stenius, 73 Mich. 563; Haynes v. Haynes, 29 Maine 247; Shull v. Raymond, 23 Minn. 66; 2 Greenleaf, Evidence, sec. 43; 18 Am. and Eng. Ency. Law (2 Ed.), p. 987.]

In Trimble v. Foster, just cited, it was said that if words were spoken sufficient to charge larceny, but accompanied with a specification of acts on which the charge was based which showed no larceny had been committed, a cause of action could not be predicated on such words. So in Hall v. Adkins, the defendant had said the plaintiff was stealing his (defendant's) corn; but in making that statement there was evidence to show the defendant accompanied it with a statement of the facts on which he based the charge and which

showed no larceny had been perpetrated or, indeed, could have been, but simply a breach of trust. It was ruled that, if the felonious charge was made under those circumstances, there could be no recovery, as an antidote was sent along with the poison [Citing Lasley v. Kemp, 22 Mo. 407]. Bridgman v. Armer, presented a similar state of facts. Bridgman was Armer's tenant and the two had a difficulty over Bridgman's refusal as tenant to deliver to Armer the latter's portion of the oat crop. During the quarrel Armer became enraged and called Bridgman a thief within the hearing of workers at a threshing machine which was cleaning the oats. The bystanders might not have understood Armer to mean Bridgman had committed a larceny in not delivering his (Armer's) part of the oats to him, for such conduct would not constitute larceny. It was, therefore, ruled that if the felonious epithet was used only as abuse instead of to charge a crime, and was understood by the hearers as abuse and not as a charge that plaintiff was in fact a thief, the words were not actionable and the verdict must be for the defendant. More cases of the like tenor could be cited. The principle underlying all of them is this: When explanatory statements made by the speaker in connection with the defamatory language, or the circumstances concerning which he speaks, are such that the aggrieved party could not have been guilty of the accusation, and it is clear that the speaker did not intend his words in their natural and precise sense and that his auditors understood he did not, the words, though ordinarily actionable, cease to be. This is equivalent to saying that a person can not recover damages for a criminal or other actionable charge unless the charge was intended, or was understood by others to have been intended because apt language was spoken to express such an intention. One may accuse another of theft in jest in the hearing of bystanders who comprehend that a mere jest was intended, and manifestly this is no slander because,

in the essence of the matter, theft was not charged. The same rule holds good where the words used import the commission of a theft but the circumstances show a theft was impossible, and the hearers were in possession of the circumstances so that they could interpret properly the words spoken and gather the speaker's real meaning from them. The rule has been applied to cases where it appeared the parties were engaged in a violent altercation and applied vituperative epithets to each other which ordinarily would be actionable, but obviously were uttered merely in the ebullition of angry emotion and not in their literal sense. [Fulda v. Caldwell, 9 La. Ann. 358; Goldberg v. Dobertine, 28 L. R. A. 721, 46 La. Ann. 1303; Richey v. Stenius, 73 Mich. 563; Penfold v. Westcote, 2 B. & P. N. R. 335; Pasquine's case and Tabart v. Tipper, 1 Camp. 351.] Most, if not all, such cases as those just cited require that the provocation should have immediately preceded the utterance of the alleged slander and that the injurious words should have been spoken under violent excitement, in the course of mutual abuse and recrimination, and when it was apparent to the hearers that they were but the ejaculations of passion. The idea is conveyed in some of the opinions that the defendant's calumnious remarks are to be regarded as acts of self-defense against the plaintiff's previous attack. There are many decisions which oppose the extension of the rule so as to include instances of actionable remarks spoken in passion, whatever the effect on the hearers, and refuse to recognize the speaker's passion as an excuse further than to lessen the damages. [Flagg v. Roberts, 67 Ill. 485; Shattuc v. McArthur, 25 Fed. 133; McClintock v. Curb, 4 Iowa 453; Finch v. Finch, 21 S. C. 543.] The Louisiana decisions have shown the most charity to angry slanderers who spoke under provocation, and some of the rulings in that State have been pronounced exceptional. [Brewer v. Chase, 121 Mich. 526, 46 L. R. A. 397.] The case of Newman v.

Stein, 75 Mich. 402, looks inconsistent with the earlier case of Ritchey v. Stenius, as the latter decision took the defendant's just provocation to be a complete defense; whereas, the other treated anger and passion as mitigating facts. In order to exonerate a defendant from liability for actionable words on the ground that he did not mean what he said, he must be found to have spoken without intending the injurious meaning ordinarily attached to his language and to have been so understood by his hearers. [Ellis v. Whitehead, 95 Mich. 105; Hankinson v. Bilby, 16 Mees. & W. 445; Steman v. Marx, 58 Ala. 608.]

If the slanderous language is spoken under excitement and passion, that fact may be given in evidence to mitigate the damages, as going to show want of actual malice on the part of the speaker and that his conduct does not deserve more punishment than may result from making the injured party whole. [Miles v. Harrington, 8 Kan. 425; Beardsley v. Maynard, 4 Wend. 336; s. c., 7 Wend. 560; Gould v. Weed, 12 Wend. 12; Dolvin v. Wilder, 34 How. Prac. 488; Brown v. Brooks, 3 Ind. 518; Zuraski v. Reichmann, 116 Iowa 388.] The court below allowed the jury to consider the defendant's motive and intention in respect to the prayer for exemplary damages, and in doing so gave the defendant the benefit of any mitigation he was entitled to by the rule last mentioned.

But was the defendant entitled to have the jury say whether there was a complete defense to the action because it was fairly inferable that he neither meant, nor was understood to mean, an imputation against the plaintiff's chastity? It is to be remembered that no such defense was attempted formally; but it seems to be admissible under the general issue. [Newell, Slander & Libel, p. 649.] The entire contention in regard to the words being used in a vituperative, instead of an accusing sense, is found in the fact that the evidence tended to show the defendant was angry and excited.

But he made no statements in connection with the words which would serve to palliate their natural atrocity nor did he refer to any circumstance known to the auditors, which would show no impeachment of chastity was meant. We are pointed to the supposed fact that Miss Miller, the only auditor except the plaintiff and the defendant's wife, did not understand the defendant to assail the plaintiff's character for chastity. But the witness' testimony was that she did not believe the charge because she knew it was false. Instead of her statement conveying the meaning that she understood the defendant to be heaping abuse on the plaintiff without intending his words in their true sense, the effect of the statement is that she understood the defendant to make the charge of unchastity, but knew it was false. We think there was no provocation close enough to the occasion to warrant the inference that the defendant was in a transport of rage and merely pouring out indiscriminate abuse. Quite a while had elapsed since he had seen his brother, and meanwhile he had visited another house and had ample time for any passion which might have been excited by his brother's condition to moderate. He was courteously received by the plaintiff and immediately uttered the slander. Besides, it is conceded there was settled animosity between the parties. In our opinion the defense that the words were not used in an actionable sense can not be allowed on the facts before us without unduly extending the principle of nonliability for calumnious utterances because of excitement and provocation. In view of this ruling it is hardly worth while to examine the instructions requested by the defendant on the subject. However, they were erroneous statements of the law. On the question of malice the court was asked to instruct that malice was the gist of the action and that the jury had the right to consider the facts and circumstances in evidence in determining whether malice existed or not and if they believed that what the defendant said was

not said maliciously, the verdict should be in his favor. That instruction ignored the rule of law stated above that malice is presumed from the false utterance of actionable words in so far as the slandered person's right to compensatory damages for the injury is concerned. The jury could look into the facts and circumstances to ascertain if there was actual malice in considering the question of punitive damages. But the requested instruction made the absence of actual malice a defense against any recovery. The law was settled the other way by the decision of Callahan v. Ingram, wherein it was said a plaintiff may recover for a slander on the malice the law implies from the utterance of false words of an actionable character. Perhaps a lack of clearness is introduced by saying malice is the gist of the action, but that it is implied; and in some jurisdictions neither legal nor actual malice is required for the award of compensatory damages. Besides, as a slandered party may recover for mental suffering (Nicholson v. Rogers, 129 Mo. 136), we can see that malevolence in the speaker, as shown by his manner, might intensify or lessen the pain inflicted by his words. But the rule is that the motive and intention of a defendant in a slander suit are to be taken account of only in determining whether to allow exemplary damages. The first paragraph of the requested instruction in regard to the defendant's angry mood when he spoke the slanderous words, reads that it was necessary for the jury to find from the evidence and all the circumstances shown by the evidence that the defendant meant to assail plaintiff's character; that his language was so understood by the persons who heard it, and that if the jury did not so find, they would render a verdict for the defendant. That is not the law. Defendant spoke words which in their natural signification and as they would ordinarily be understood, cast a foul imputation on the plaintiff's character. In an action for slander the words are, in the

first instance, to be taken in their natural sense and it devolves on the defendant to show they were spoken innocently. [Newell, Slander and Libel, p. 302, sec. 25; Pipe v. Van Wormer, 6 How. Prac. 699.] And to thereby acquit himself of liability, it devolves on a defendant to establish by a preponderance of the evidence, not only that he spoke the words without intending to convey their usual meaning, but that his hearers knew he did not intend that meaning. Now the instruction under review made the plaintiff's recovery depend on the jury's finding; firstly, that the defendant meant to assail the plaintiff's character; secondly, that his language was understood in that sense by his hearers. Naturally they would understand it in that sense and no other, and there is no proof that they understood it differently. If they did so understand it, it is immaterial, so far as the plaintiff's right to compensation is concerned, in what sense defendant used the words. A person is presumed to intend the natural consequences of his acts, and when a man makes such a charge against a woman he can not escape responsibility by saying he did not mean it, without proof that it was not taken seriously because those who heard it knew he did not mean it. The prosperity of a slander, like that of a jest, lies in the ear of the hearer. And it is the sense in which the hearer apprehended the words which the law chiefly considers as productive of the chief mischief. It has been decided in this State that drunkenness will not excuse or mitigate a slander. [Mix v. McCoy, 22 Mo. App. 488.] There are decisions to the contrary; and be that proposition as it may, we know of no principle or precedent which would excuse the defendant from answering to the plaintiff on a mere finding by the jury that he did not mean what he said.

We have gone over the errors assigned for a reversal of the judgment and find that none of them was well taken.

The judgment is affirmed. All concur.