JASPER MILLER, Respondent, v. GEORGE J. DORSEY, Appellant.

St. Louis Court of Appeals. Submitted on Briefs May 6, 1910. Opinion Filed May 31, 1910.

1. **SLANDER: Charging Theft: Instructions.** In a suit for slander by charging theft, instructions that defendant was not liable, if the things charged to .have been stolen would not be subject to larceny, were properly modified by stating that defendant must have spoken the words without malice.

2. ———: ———: **Malice Presumed: Instructions.** In a suit for slander by charging theft, an instruction which told the jury if they found a verdict for plaintiff they were not confined to an allowance of actual damages, but might allow exemplary damages also, if they found the words were spoken with express malice, was not erroneous as against defendant, since an accusation of theft, being actionable slander *per se*, unless it relates to facts or acts which could not have been a crime, is presumably malicious.

3. ———: ———: **Fixtures: Instructions.** Since the question of fixtures, as applied to such articles as an iron bracket fastened to a wall of a house, but moved from house to house by the owner as he changed his location, posts lying on the ground, and firewood, is a mixed question of fact and law, defendant's instructions, which treated ·them as fixtures, were properly refused as being misleading.

4. **INSTRUCTIONS: Refusal: Covered by Other Instructions.** Instructions correctly covered by those given are properly refused.

5. **SLANDER: Statute of Limitations.** Under the Statute of Limitations, suit for slander must be brought within two years.

6. ———: ———: **Instructions: Harmless Error.** Instructions authorizing recovery for slander uttered beyond the period permitted by the Statute of Limitations are harmless error, where the evidence fails to show slander beyond the statutory period.

7. ———: **Plaintiff Eliciting Slanderous Remarks: Instructions: Sufficiency of Evidence.** Evidence, in an action for slander, *held* insufficient to warrant an instruction that plaintiff could not recover because a specified person acted as his agent in eliciting the accusation for the purpose of the suit.

8. ———: Passion and Anger: Mitigation of Damages. In a suit for slander, passion and anger of defendant in speaking slanderous words may be shown to mitigate damages, but not to defeat the action.

9. ———: Charging Theft: Punitive Damages. Punitive damages are properly awarded for slander by charging theft.

10. ———: ———: ———: Instructions. In an action for slander by charging theft, it is proper to instruct that on finding for plaintiff he might be awarded damages to compensate him for the mortification and shame he might have suffered and the disgrace attempted to be cast upon him and the damage to his reputation, as well as to punish defendant for his wrongful and malicious attack.

11. ———: ———: Sufficiency of Evidence. Evidence, in a suit for slander by charging theft, held to sustain a recovery.

12. ———: Pleading: Particularity Required. Generally the same particularity is necessary in a petition for slander as is required in an indictment or information.

13. ———: Forgery: Words Imputing Crime: Sufficiency. Statements that a contract was not the one defendant signed and that plaintiff and his wife changed it are insufficient to show a slanderous accusation of forgery.

Appeal from Lewis Circuit Court.—*Hon. Chas. D. Stewart,* Judge.

AFFIRMED IN PART; REVERSED AND REMANDED (*with directions*) IN PART.

*Marchand & Rouse* and *E. R. McKee* for appellant.

(1) The court erred in admitting any evidence, over defendant's objection, on fourth count of plaintiff's petition, wherein it is attempted to be charged that defendant accused him of forgery. It is therein simply alleged that defendant stated that plaintiff had changed a contract which is not sufficient to charge forgery. Church v. Bridgman, 6 Mo. 190; State v. Kattermann, 35 Mo. 105; Curry v. Collins, 37 Mo. 324; State ex rel. v. Dean, 40 Mo. 464; State v. Fisher, 50 Mo. 256; Christal v. Craig, 80 Mo. 367; Legg v. Dunleavy, 80 Mo. 558; Ulman v. Daily Record Co., 189 Mo. 378; Krup v.

Carley, 95 Mo. App. 640; Trimble v. Foster, 87 Mo. 49.
(2) The court erred in admitting any evidence, over de-
fendant's objection, on fifth count of petition, wherein it
is attempted to be charged that defendant accused plain-
tiff of having committed forgery. It is simply therein
charged that defendant stated a certain contract was not
the contract he signed; that plaintiff had changed it,
and that it was not his signature to it, which is not suffi-
cient to charge forgery. (Same authorities as above
cited.) (3) The court erred in giving instructions
numbered 1, 3 and 5, respectively on motion of respond-
ent. The jury is left to find, by these instructions what
words would charge larceny. They should have been in-
formed if the goods charged to have been stolen were
severed from the real estate by plaintiff, or were in the
possession of plaintiff at the time of the alleged taking,
and the hearers knew that fact, or that they were spoken
in the heat of passion as words of abuse and not of ac-
cusation, then the speaking would not be actionable.
Bridgman v. Armer, 57 Mo. App. 528; Krump v. Gar-
len, 95 Mo. App. 640; Israel v. Israel, 109 Mo. App. 366;
Clements v. Maloney, 55 Mo. 352; and same authorities
cited under point 1. (4) The court erred in giving
instructions numbered 2, 4 and 6, or either of them,
on motion of the respondent. This action was com-
menced January 28, 1908, and by these instructions the
jury is told that the speaking of the words any time
after the first day of January, 1905, would warrant them
in finding for plaintiff, while action for slander cannot
be maintained unless within two years commenced,
from the speaking of the words. R. S. 1899, sec. 4275;
Barnard v. Boulware, 5 Mo. 454. (5) The court erred
in giving instructions numbered 8 and 9, or either of
them, on motion of respondent, for by them the jury is
instructed to find for plaintiff if they find the words
were spoken within three years, and authorized to find
for plaintiff if words as charged were spoken, when the
limitation in actions of slander is two years and the

words charged to have been spoken by plaintiff are not sufficient to constitute slander. See authorities cited under points 1 and 4. (6) The court erred in refusing to give instructions numbered 9, 10 and 11, or either of them, requested by appellant, and by altering and giving them as so changed, for one instruction, as offered, told the jury if the property defendant stated plaintiff had stolen was a part of the real estate, and the hearers so understood and knew, would not be charging larceny. The court changed same and told the jury that though it was real estate defendant was charging plaintiff with stealing, and the hearers knew that it was, yet if the words were maliciously spoken they should find for plaintiff. (7) The court erred in refusing to give instructions numbered 12 and 13, or either of them, requested by appellant, and in changing and giving same as changed over the objection of defendant. By the instructions as offered defendant requested the jury to be instructed, to warrant them in finding against defendant on the issue of accusing plaintiff of forgery they should find that defendant stated wherein the instrument had been altered, and that it was in a material part and that it was done with the intent to injure and defraud. The court changed same so it instructed the jury that if they found he so spoke the words with malice they should find against him, without finding that he stated wherein the change had been made or that it had been done with the intention of defrauding, or that the change was material. (8) The court erred in refusing to give instructions numbered 15, 16 and 17, or in refusing either of them, as requested by appellant. By these instructions the court was requested to tell the jury that if it was property that plaintiff was in possession of, and had not parted with it at the time of the speaking that defendant accused him of stealing, and that the hearers knew that fact, it would not be charging larceny. Hall v. Adkins, 59 Mo. 143; Israel v. Israel, 109 Mo. App. 366. (9) The court erred in refusing to

give instructions numbered 18 and 20 requested by appellant. By these the court was requested to tell the jury that fixtures were a part of the real estate and were not subject of larceny, and if defendant did accuse plaintiff of stealing fixtures, and the hearers knew they were fixtures, it would not be charging larceny, and an action for slander, for such speaking would not lie. Trimble v. Foster, 87 Mo. 49; Israel v. Israel, 109 Mo. App. 366. (10) The court erred in refusing to give instruction numbered 19 requested by appellant, for if words were spoken to party sent by plaintiff to procure the speaking and the speaking was brought about for the purpose of enabling plaintiff to bring this suit, the words would not be actionable. 1 Chitty Pleadings, p. 493; Sutton v. Smith, 13 Mo. 120.

*N. W. Simpson, Walter Hilbert* and *H. B. Clay* for respondent.

STATEMENT.—Plaintiff commenced this action against defendant in the circuit court of Lewis county on the 28th of January, 1908. Afterwards he filed an amended petition containing five counts. As the answer to the petition takes up each count separately, for convenience we state the answer to each count as we proceed with the statement.

The first count charged that defendant, "on the —— day of ——, 1907," in the presence of one Thomas Day and in a conversation with defendant, said of and concerning plaintiff, "You are a thief; get away from here; you are a thief; you are a dirty, lying, thieving s— of a b—."

Answering this count defendant interposed, first, a general denial; second, a specific denial of speaking the words charged; third, specifically denies that by any words spoken he charged plaintiff with having committed larceny and denies the party present understood him so to charge; fourth, he denies knowledge of having

spoken the words charged and alleges that plaintiff had at the time insulted, aggravated, abused and enraged him and whatever he said was said in the heat of passion caused and provoked by plaintiff as aforesaid, and were words of abuse only and not of accusation, and were so intended as such and the hearers so understood them; fifth, he alleges that the articles which he is charged with having accused plaintiff of stealing were fixtures, a part of the real estate; that they were not the subject of larceny and that the taking would only be trespass and the hearers were at the time so informed and knew.

By the second count it is charged that the defendant accused plaintiff of stealing by speaking of him as follows: "I didn't call him a thief; but he stole some things out of the house and some wood."

The answer to this is substantially the same as that to the first count.

By the third count it is charged that the defendant accused plaintiff of having committed larceny by speaking of and concerning him as follows: "Miller stole the stuff. He took the stuff; and if that isn't stealing, I would like to know what is."

The answer to this is practically the same as to the other two counts, with the additional averment that the person to whom it is alleged the language was spoken of and concerning plaintiff "at the instance and request of plaintiff, that he might in behalf and for plaintiff, obtain and procure statements and utterances from defendant," to enable plaintiff to bring this suit and for the purpose of obtaining such statements, related and communicated to him utterances and communications of plaintiff, and this aggravated and enraged defendant and caused him to speak and utter any words of abuse, if any he did, on that occasion, and whatever he said was said in the heat of passion and were words of abuse only and not of accusation and the hearer so knew and understood.

Miller v. Dorsey.

By the fourth count it is charged that defendant accused plaintiff of forgery by speaking of him as follows: "They have changed the contract."

To this fourth count a general denial, a specific denial of speaking the words charged and a denial that the hearer understood defendant to charge plaintiff was guilty of forgery or that he intended so to charge was interposed.

By the fifth count it is charged that the defendant accused plaintiff of forgery by speaking of and concerning him the following words: "The contract is not the contract I signed. The contract did not suit Miller's wife, and they changed it. The contract they have is not the contract I signed. My daughter and I will both swear that it is not my signature to it."

To this count defendant interposed the same defenses as interposed to the fourth count, with the additional averments as to the conversation having been brought on by a person acting at the instance of plaintiff and as are contained in the answer to the third count.

A general denial was filed by way of reply.

The trial was had before the court and a jury. Testimony was introduced on the part of plaintiff tending to show that defendant had spoken the words charged, or enough of the exact words charged to sustain the allegations of the several counts of the petition as to the words uttered.

There was evidence on the part of plaintiff tending to show that there had been a dispute between plaintiff and defendant as to a matter of indebtedness between them and as to the acts of plaintiff in removing certain property from a house and farm, which had been occupied by plaintiff but sold by him to defendant, and that in this conversation or dispute, the defendant enumerated certain articles which he claimed did not belong to plaintiff, such as window curtains, muslin sheeting which was nailed up to divide a room in the house, brackets off the wall, some fence posts not in

place but strung along a division line, and some cord wood, which he claimed plaintiff had taken, and in the course of this dispute defendant became angry and uttered the words complained of in the first count, along with other words which were very abusive. There was evidence on the part of plaintiff tending to show that the words charged in the second and third counts of the petition were uttered by defendant of plaintiff concerning the same transaction and articles. There was also testimony on the part of plaintiff tending to show that the brackets referred to which he had taken from the house were iron brackets which had been put up by him and which he had been accustomed to move around with him when he moved.

Witness Norris, who was the one claimed to have been sent to defendant by plaintiff or his attorneys to trap him into a conversation and secure evidence for the prosecution of this case, denied any such employment.

A witness for plaintiff was asked on cross-examination if he understood from what defendant said that he was calling or intending to charge plaintiff with being a thief or whether he understood it to be simply words of abuse or reproach. He answered that he "would take it from nature. If I would take it from the nature of the words, it was in the heat of passion, but the words would demonstrate thief, I reckon. . . . I understood from that statement that Dorsey was out of humor. I think it was demonstrated he was out of humor and would never have said it if he had not been. He didn't cause me to believe that Mr. Miller was a thief."

One of the witnesses testified that he supposed from what he knew of the articles defendant accused plaintiff of carrying away that they belonged to the place, were fixtures, and that plaintiff could not be truthfully said to have stolen them.

We do not think it necessary to set out the testimony covering the allegation in the fourth and fifth counts of the petition for reasons which will hereafter be stated.

On the part of the defendant there was testimony tending to prove that the defendant was very angry when he uttered the words charged; also that plaintiff had admitted in conversations he had had with different parties that he had taken things off the farm that he should not have taken; that he might have taken something that he should not have taken. On his own behalf the defendant testified to the effect that he had purchased a farm from plaintiff. The understanding between them was that they closed the deal on the 23d of August, 1906, and Miller was to give him possession on the first day of January following. Defendant went over to the farm just about a week before the time was up with the money to pay what he had agreed to and plaintiff would not accept it. Finally, in February, 1907, plaintiff surrendered possession of the premises to defendant. When defendant purchased the property he examined it and found that some posts had been hauled out along the line of the fence and plaintiff told him that they went with the farm, to fix up the fence between that farm and a neighboring one. When defendant got possession these posts were not there and he never found them. Plaintiff had taken two shelves and a bracket supporting them out of the kitchen and took a partition off of the wall, that is, sheets that were tacked up and formed a partition. They were muslin sheets stretched on a studding for a partition and these had been removed. At the time he bought the place and looked at the house, there was nothing said about this muslin not belonging there; they appeared to be tacked to the studding. The shelves referred to were put up in the kitchen on small cast-iron brackets. The bracket was nailed or screwed to the wall and when removed it left holes in the wall. Defendant spoke to plaintiff about them and

he said he would either pay for them or bring them back and he agreed to bring them and the sheeting back; he offered to pay for them but defendant declined and told him to bring them back. When he spoke to plaintiff about the posts, plaintiff told him that he had split the posts up and put the wood from them on the place. Defendant was never able to find them. Any trouble between them was over these shelves and the muslin and the posts. That was where the difficulty started. With reference to the charge that the language referred to in the third count of the petition had been uttered in consequence of being drawn out in a conversation with Mr. Norris, defendant testified that he had not uttered the words in the form that Norris had testified to. Norris came to defendant's house and said he had seen Mr. Simpson, who appears to have been one of the attorneys for plaintiff at the time, and who is attorney of record in this court for plaintiff. Norris told defendant that Mr. Simpson wanted to know why he (defendant) had called Miller a thief. Defendant said that he had told Miller he had never called him a thief and said, "Why did he (plaintiff) say I (defendant) called him a thief," and defendant said to Norris, "If taking these things isn't stealing, I would like to know what is." Defendant then continued testifying: "That is the very words I spoke to Mr. Norris. I did not, on that occasion, or on any occasion, state to Norris, 'Miller stole the stuff. He took the stuff and if that is not stealing, I would like to know what is.' I never said he stole it. I explained to him that it was the shelves of the kitchen, brackets out of the kitchen, and muslin off of the partition, that he had taken out of the house. That is all I ever did tell Mr. Norris. I never charged Mr. Miller with having stolen the property, to Mr. Norris, or to any one. I never intended for any one to understand me that way." He also denied making the

statement that he did with any intention of charging plaintiff with larceny. Testifying concerning the conversation between plaintiff and himself when Mr. Day was present—the conversation referred to in the first count of the petition—defendant stated that he had a conversation with Day and plaintiff. Quoting his exact testimony as abstracted by his counsel and referring to plaintiff, defendant testified, "He (plaintiff) said he came over to get his binder, and I said, 'You pay me for what things you took out of the house and I will pull your binder to the road.' He said he wouldn't pay me a cent. I then told him he was a lying thief, and a s— of a b—. I said that. That is the only time I ever spoke the word thief in reference to him. I did on that occasion. He made me mad, and I used those words exactly in that form. It was through anger that I did it. I was not intending to charge him with stealing."

At the instance of plaintiff the court gave 14 instructions in addition to the instructions as to the form of verdict and the number of jurors necessary to agree upon a verdict.

At the instance of the defendant it gave 8 instructions in the form asked by defendant and it gave instructions 9, 10, 11, 12 and 13, asked by defendant but changed and modified by the court.

The instructions given at the instance of plaintiff were separated as to each count, except as to 11, 12, 13 and 14, which were general. The 11th instruction told the jury that if they found for plaintiff they might assess such an amount of damages as they might deem proper under the view of the whole case to compensate him for the mortification and shame he might have suffered and the disgrace and dishonor attempted to be cast upon him and all damages done to his reputation, as well as to punish the defendant for his wrongful and malicious attack, not exceeding, however, the amount claimed in the petition. The 12th instruction told the jury that words spoken by the defendant are to

be taken in their natural sense and that the burthen is on the defendant to show that they were spoken innocently and that his hearers knew that he did not intend to slander plaintiff. The 13th instruction was as to the testimony of the defendant and told the jury that defendant was a competent witness but that in considering his testimony they might take into consideration the fact of his interest, together with all the other facts and circumstances in the case. The 14th instruction told the jury that in order that the defendant should acquit himself of liability, it devolved on him to establish, by the preponderance of the evidence, not only that he spoke the words without intent to convey their usual meaning, but that his hearers knew that he did not intend their usual meaning. The remaining ten instructions given at the instance of the plaintiff, were practically grouped by twos, two being given as bearing on each of the five counts in the petition. In substance the first of each group told the jury that if they believed from the greater weight of the evidence introduced in the cause that the defendant spoke the slanderous words charged in the several counts "or enough of the exact words charged to constitute the crime of larceny" (and as to the fourth and fifth counts to constitute the charge of forgery) "against plaintiff, then the law presumes they were spoken maliciously and it is not necessary to prove express malice in order to warrant a verdict for the plaintiff;" and that if they found a verdict for plaintiff they were not confined to the actual damage he may have sustained but in addition the jury might allow exemplary damages, "and if you find for plaintiff on count No. 1" (and also on counts Nos. 2, 3, 4 and 5), "you may allow him such sum of actual damages as you may deem just and proper, not exceeding $500, and in addition thereto, if you believe that the words were maliciously spoken, you may allow him such sum as punitive or exemplary damages as you may deem just and proper, not exceeding $500." The second of each group told the

jury that if they believed from the evidence that the defendant "within two years prior to the——day of——, 1907, spoke of and concerning the plaintiff in the presence and hearing of" (giving the names of the parties and the language set out in the several counts), or that he spoke in the presence of these parties named "enough of the exact words set out above to constitute the charge of the crime of larceny" (or forgery) "against the plaintiff, then you will find the issues for the plaintiff in the first count in his petition;" and the like as to the second, third, fourth and fifth, *mutatis mutandis*.

The eighth instructions given as asked by defendant defined malice, told the jury they were the sole judges of the credibility of the witnesses and the weight to be given to their testimony, instructed as to the meaning of the term "preponderance or greater weight of evidence," and telling the jury: "To warrant you in rendering a verdict for plaintiff on the issues that he is required, under the instructions of the court, to prove and establish by a preponderance of the evidence or the greater weight of the evidence, or where the burthen of proof is on him, you must be satisfied such issues have been proven by evidence more credible or convincing than the contrary evidence regarding such facts." (This is a literal copy of the close of the third instruction.) The fourth instruction told the jury that the burthen of proof rests on plaintiff to prove the speaking of the exact words charged or enough of the exact words charged to constitute the offense charged, "and that the words were spoken wrongfully and maliciously without just cause or excuse; and unless you so believe from the greater weight of the evidence in the cause they were thus spoken, your verdict should be for the defendant." The fifth instruction told the jury that if they believed from the evidence that the words were spoken "in the heat of passion, engendered by the acts or words of plaintiff at the time, and were spoken as mere words of abuse, and were so understood by the hearers, or

would be so understood by an ordinary, intelligent, prudent man, that would be a sufficient excuse for the speaking. And if you believe the words were spoken, but in the heat of passion caused as aforesaid, and the hearers so understood, your verdict should be for the defendant. Or if you believe any of the words charged were spoken, and were spoken as aforesaid, and so understood by the hearers, you should find for the defendant on the complaint of speaking said words." The sixth told the jury that if they found plaintiff spoke the words in the first count or enough of them to constitute the charge, if they further found from the greater weight of evidence that "defendant did not mean to accuse the plaintiff with being guilty of stealing and said language was not so understood by the person hearing the same, the verdict should be for the defendant." The seventh instruction told the jury that if they believed that the words referred to in the first count of the petition "were uttered in the heat of passion—in anger—as words of abuse and reproach, and were not intended as actually charging plaintiff of being guilty of larceny, and were so understood by the hearer as being mere terms of abuse uttered in anger, your verdict will be for the defendant on the first count in said petition." The eighth instruction told the jury that if they did not find plaintiff had suffered any actual damage they could not find punitive damage, "for the law does not permit the assessment of punitive damages alone." This instruction then directed the jury to find separately on each count.

The ninth, tenth, eleventh, twelfth and thirteenth instructions asked by defendant were not given as asked but were changed by the court as will be hereafter noted. The ninth and tenth instructions given, with the modifications (the words inserted by the court being underscored or italicized), told the jury that if they found from the greater weight of evidence in the case that the defendant at the time of speaking the words set out in the second count, *"without malice* stated and charged

the plaintiff with having removed from the house sold by plaintiff to defendant, some muslin or sheeting that had been permanently fastened to the studding of said dwelling house in the second story thereof, for the purpose of separating one room from another, and some brackets or shelves, which had been permanently fastened to the wall of said dwelling house, and some posts that had been strung out along a fence row to repair the fence, and some wood, which plaintiff had chopped and hauled away from said premises; and that said words were spoken by defendant *without malice* in regard to said sheeting, shelves, posts and wood so removed as aforesaid from said premises, and at the time of the speaking of said words, defendant believed that the taking of said articles constituted larceny, the court instructs you that the taking of said articles as aforesaid did not constitute larceny, and plaintiff cannot recover on the second count of his petition, *unless defendant maliciously made said statement.*" That as to the third count was given as applicable to that, only changing the number of the count and the words averred in it. The eleventh and twelfth instructions as asked told the jury that sheeting permanently tacked to studding to form a partition and posts strung along a fence row intended to be used in repairing the same, were parts of the realty as were timber trees on the estate and if they were wrongfully cut and converted into wood and the wood carried away, carrying it away would not be larceny but trespass. The court added to the instruction as asked which was to the effect that stating to an individual, "who knew or had been informed such article or articles had been stolen would not entitle the party thus charged to maintain an action for slander for such speaking, for it would be only charging trespass," the words, "unless said words were maliciously spoken." It is not necessary to notice the twelfth and thirteenth nor the changes made in them for reasons which will

Miller v. Dorsey.

be hereafter stated, each of these two relating to the fourth and fifth counts of the petition.

The court refused an instruction asked which was, in effect, a demurrer to the evidence introduced under each of the five counts of the petition. Defendant also asked instructions 14, 15, 16, 17, 18, 19 and 20, each of which the court refused to give. By No. 14 the court was asked to charge the jury that under the pleadings and the law and evidence in the case they should not assess punitive damages. No. 15 was to the effect that if the jury believed from the evidence that the plaintiff was in possession of the articles which it was alleged he had carried away, and that defendant had not been put in possession of the same before they had been carried away, and the hearers knew such facts, their verdict should be for defendant as to the issues involved in the first, second and third counts of the petition. By No. 16 the court was asked to instruct the jury to the effect that if one is charged with stealing, under circumstances which show no larceny was capable of being committed or at least was not committed but that the act referred to was simply breach of trust or mere trespass, an action for slander could not be maintained therefor. By No. 17 the court was asked to instruct the jury to the effect that the evidence shows that plaintiff was in possession of the farm sold by him to defendant at the time it is alleged that defendant stated that the personal property was stolen therefrom and that the plaintiff had not surrendered possession of it and that the hearers of the language so knew and that as long as the plaintiff was in possession, the carrying away of such articles as he was in possession of would not be larceny. The court was asked by instruction No. 18 to charge the jury that if the articles spoken of were fixtures belonging to the real estate they were not subjects of larceny, the taking of them could only be a trespass and that though one might state to another, who knew the nature of the property, that such property

had been stolen, that would not be a charge of larceny, for the hearers would be presumed to know that it could not be larceny but he only charged a trespass though he used the word stole. The court was asked in the 19th instruction to charge that if the jury believed from the greater weight of evidence that Norris was sent to interview defendant by plaintiff or his agent to procure statements or utterances of defendant to enable plaintiff to sue defendant on a charge of slander, and that the defendant made such utterances to Norris while he was acting as the agent of plaintiff to procure them, their verdict should be for defendant. The 20th instruction asked was as follows:

"Though you may believe from the greater weight of the evidence in the cause that the defendant spoke the exact words charged in the first count of the petition, or enough of the exact words charged to constitute a charge of larceny by plaintiff; yet if you further believe from the greater weight of the evidence in the cause that the hearer knew and understood at the time, he was charging plaintiff with having taken sheeting or muslin from the walls of the house, that formed a part thereof as a partition, and brackets from the walls and shelving that were permanently fastened thereto, or posts intended to be used in repairing a fence, or wood from trees that had been chopped from said premises, or that he explained to his hearer at the time so they could know at the time that they were a part of the house and premises, your verdict should be for the defendant."

The court refused these, defendant duly excepting, and also excepting to the refusal of the instructions as asked and to the giving of them in the modified form, also saving exceptions to the giving of the several instructions at the instance of plaintiff.

The jury returned a verdict on each count in favor of plaintiff and awarded him thirty dollars actual and thirty dollars punitive damages on each count. Motions

for new trial and in arrest were duly filed, overruled and exceptions saved and an appeal perfected to this court by defendant, judgment having been entered on the verdict.

REYNOLDS, P. J. (after stating the facts).—We have given sufficient of the record, as we think, to an understanding of the questions involved in this case, and possibly more fully than justifiable. But we have done so with the desire of bringing out the salient features of the case necessary to make intelligible what we have to say concerning the law of slander. For some reason that law appears possibly the most involved of any branch treated of by our courts. It would seem that all men ought to know what is slander; that this is within the understanding of the everyday, ordinary man. True, our statutes and the common law have defined certain words as slanderous *per se* and give a right of action for their utterance. It would seem to the ordinary lay mind that if a man calls his neighbor a thief, whether he was doing it in the heat of passion or in cool and calm deliberation, and particularly when he accompanied it with an oath or a vile epithet, that he had uttered a gross slander against his neighbor, unless it was true that that neighbor was a thief. It would also naturally occur to every one that when one so slanders his neighbor he should be made responsible for his slander—his punishment mitigated, however, when he spoke under great provocation and in the heat of passion. Very commonly, instead of the application of such an epithet, or other slanderous language, resulting in a peaceable action in the court to recover damages for the slander, as is the case here, there has been a physical assault, and, in very many cases, the courts have been called upon to determine whether the utterance of such language should be given in evidence in mitigation of the punishment of the man against whom they were uttered for having violently assaulted or even killed the

slanderer.   We very much doubt whether the ordinary man is able to appreciate the refinement of reasoning which attempts to say that, if the subject-matter of the theft, that is to say, the articles charged to have been stolen, are not capable of being stolen, and the person who heard the language uttered knew that the thing spoken of was not capable of being stolen, therefore the utterer of the slanderous words had not really called the taker a thief, and should not be held responsible for the slander.   It would likely appear to the mind of the ordinary man that if one falsely and maliciously calls his neighbor a thief and accuses him of stealing that which is not the subject of larceny, the slander is the greater.   But the authorities hold that to constitute actionable slander the words must relate to a crime which the plaintiff could in fact commit.   This is the defense in this case, as against the first, second and third counts in the petition.   However unreasonable the rule may appear, support is found for it in many decisions of the courts.   See among others Lemon v. Simmons, 57 L. J. Q. B. 260; Williams v. Stott, 1 Cr. and M. 675; Israel v. Israel, 109 Mo. App. 366, 84 S. W. 453; Hall v. Adkins, 59 Mo. 144; Christal v. Craig, 80 Mo. 367; Legg v. Dunleavy, 80 Mo. 558; Trimble v. Foster, 87 Mo. 49; Callahan v. Ingram, 122 Mo. 355, 26 S. W. 1020.   It will be seen that in the 10th and 11th instructions given at the instance of the defendant, the learned trial judge gave the defendant the benefit of this line of defense.   They are substantially the defendant's instructions correctly altered by the insertion of the caution that defendant must be found to have spoken the words without malice.

In all the instructions given at the instance of plaintiff, the court very carefully directed the jury that they must find for the greater weight of the evidence in the case that the defendant spoke the slanderous words as charged in the counts in the petition, or enough of the exact words charged to constitute the crime of lar-

ceny against the plaintiff; and the court further charged the jury that the law presumes they were spoken maliciously and that it was not necessary to prove express malice in order to warrant a verdict for the plaintiff. The jury were further told that if they found a verdict for the plaintiff they were not confined to the actual damages the plaintiff may have sustained, but in addition thereto may allow exemplary damages, if they found the words were spoken with express malice. We see no error in this except it be that it is rather too favorable to the defendant. The words being actionable *per se,* unless the jury found that they related to facts or acts, which though charged as a crime could not have been one, the law presumes malice. The court distinctly instructed at the instance of plaintiff that the jury should find separately on each count of the petition and the jury did so. The instructions given at the instance of the defendant certainly placed the case before the jury in the most favorable aspect possible for him. We have set them out in our statement of the case and it is not necessary to repeat them here. It is difficult to imagine any instructions which could more clearly and favorably present defendant's theory of the case to the jury. There are no serious errors assigned to the admission or exclusion of testimony and no pretense that the words charged to have been uttered or "enough of the exact words charged to constitute the offense charged," had not been proven.

Adopting the theory of defendant that it is not slander to accuse one of being a thief because the articles taken are fixtures and not subjects of larceny, we cannot agree with the contention of counsel for appellant that all of the articles referred to were of the realty or fixtures, and that the instructions asked on that theory were improperly refused. It appears that the bracket, which was one of the articles referred to, was an iron bracket, fastened to the wall it is true, but which the plaintiff had been in the habit of moving from

house to house as he changes his location. The posts referred to were not in place but were lying on the ground. As far as we can gather from the testimony, the wood referred to was cordwood, firewood, cut for use. The instructions asked and refused treated all these articles as fixtures. The question of fixtures, as applied to such articles, is a mixed question—one of fact and of law—and the defendant's refused instructions concerning them were misleading. The other refused instructions were correctly covered by those given.

Error is assigned against several of the instructions which are to the effect that if the jury found from the evidence in the cause that the defendant "within two years prior to the——day of——, 1907, spoke of and concerning the plaintiff," the language charged in the several counts, etc., plaintiff could recover. It is claimed that this extended the Statute of Limitations to a period of three years instead of confining it to two years, and in support of the alleged error we are referred to Sutton v. Smith, 13 Mo. 120. There is no question that the Statute of Limitations of this State limits the bringing of an action for slander to two years. The action in this case was commenced the 28th of January, 1908. Several of the counts of the petition, as noted, charge that the conversations in which the language was used took place "on the——day of——, 1907." It is very probable that this date in the counts is what caused the error in the instruction, but there is no pretense whatever in the evidence that any of the conversations relied upon occurred prior to January or February, 1907, so that while it was error in the instructions to run the statement back to two years prior to 1907, under the evidence in the case and under the pleadings it was harmless error.

The claim made that plaintiff cannot recover under the third count in the petition because the witness Norris was acting as agent of plaintiff in going to the house

of defendant and eliciting from him the expressions concerning plaintiff for the purpose of bringing and sustaining this action, cannot be upheld. The proof does not warrant the instruction in the form in which it was asked on this matter.

The issue as to the slanderous words having been uttered in passion and anger was set out in the instructions which were given at the instance of the defendant much too favorably for defendant. These told the jury that if the words were spoken in anger and passion plaintiff could not recover. This is not the law. Passion and anger may be given consideration by the jury, not to defeat the action, but in mitigation of damages. This is so fully covered by the decision of this Court in Israel v. Israel, supra, and the subject so thoroughly discussed there that we do not think it necessary to elaborate on it. See also Callahan v. Ingram, supra; Minter v. Bradstreet Co., 174 Mo. 444, 73 S. W. 668; Gray v. McDonald, 104 Mo. 303, 16 S. W. 398. We are also of opinion that this was a case in which it was proper for the jury to award punitive damages, if under the instructions of the court they chose to do so. The instructions given at the instance of the plaintiff on that were correct; the one asked by defendant was properly refused.

Without attempting to go into any fuller examination of the evidence, we hold that there is sufficient evidence to sustain the verdict of the jury against the defendant on the first, second and third counts of the petition.

The verdict against the defendant on the fourth and fifth counts of the petition cannot be sustained.

The action for damages for slander in many of its features is essentially a criminal action, one which the law allows the party slandered to prosecute as for a verbal assault upon his character. By our statute, Revised Statutes 1899, sections 2258 to 2262, libel or slander against a living person or against the memory of the

dead, is a misdemeanor punishable as such. In addition to the criminal prosecution, the law allows the party injured to sue and by way of punishing the wrongdoer, under the name of damages, practically imposes a fine, which the law allows the subject of the assault to collect by civil action. The same particularity, generally speaking, is necessary in the averments of the petition to recover these damages as is required in an indictment or a criminal information. Without setting them out in full, it is enough to say of the fourth and fifth counts of the petition that the spoken words charged, not being slanderous *per se,* there are no averments made in those counts which in and by themselves show that forgery was intended to be charged. As for instance, it is not set out that the defendant had signed the papers; that his signature had been forged; that material alterations had been made in the contents or bodies of the contracts referred to; in short, there are no averments, considering the counts with every possible intendment that is allowable to be made, which can be held to distinctively set up that the defendant had charged the plaintiff with such acts as constituted the crime of forgery, as that crime is known at common law or defined by statute. [Curry v. Collins, 37 Mo. 324; Krup v. Corley, 95 Mo. App. 640, 69 S. W. 609, and cases cited; Julian v. Kansas City Star Co., 209 Mo. 35, 107 S. W. 406.] The objections to any testimony as to these counts should have been sustained, or, that overruled, the demurrer to the evidence, so far as it related to them, should have been sustained.

We affirm the verdicts and judgment on the first, second and third counts of the petition. The judgment will be reversed and the cause remanded to the circuit court on account of these errors as to the fourth and fifth counts, with directions to set aside the verdict on the fourth and fifth counts of the petition and the judgment in the case, and to enter up a judgment in favor of plaintiff for the amount of the verdict returned on

the first, second and third counts of the petition, and in favor of defendant as to the fourth and fifth counts. The costs of the appeal in and to this court will be divided between plaintiff and defendant, one-half thereof taxed against each. The costs in the circuit court will be taxed against the defendant. All concur.