NAHUM HAYNES & *ux. versus* WILLIAM HAYNES.

Words spoken of another in themselves actionable, but under such circum-
stances as would not lead the persons present to believe they were spoken
as truth, cannot support an action.

THIS was an action of the case for words spoken of one of
the plaintiffs. On the trial, before SHEPLEY J., the plaintiff
offered evidence tending to prove, that the words were spoken
and published as alleged. There was also evidence that de-
fendant was excited and both parties angry, and that there
were circumstances of provocation.

The Judge, among other things, instructed the jury, that if
the words were spoken under circumstances of excitement and
anger, and under such circumstances as would not lead the
persons present to believe they were spoken as truth, they
were to be accounted a mere ebullition of ungoverned temper,
and as such did not import malice, nor would they sustain a
case for damages like the present case.

The jury returned a verdict for the defendant, and the
plaintiffs excepted to the instruction.

*Herbert,* for the plaintiffs, contended that, malice is an in-
ference of law. 10 B. H . 263; 3 Pick. 384 and 311. As to
what words are actionable. 2 Greenl. Ev. § 418.

If the words are actionable, malice is an inference of law.
Starkie on Slander, 334; 2 Stark. Ev. 461.

The general issue puts in issue the speaking, the colloquium,
the malice and the damages. 2 Greenl. Ev. § 410, 417, 420;
Stark. on Slander, 12, 17; 4 B. & C. 247; 2 Bing. N. C.
457 and 372; 10 B. & C. 263.

The circumstances are not such as can excuse or justify.
I can find nothing in the books which sustain the instruc-
tions. Privileged cases are referred to in 2 Stark. Ev. 426,
464; 2 Greenl. Ev. § 421 and notes. It has been held, that
words actionable will sustain an action, when spoken in jest.
Provocation is no justification, but can only go in mitigation of
damages. 2 Greenl. Ev. § 275.

*Robinson,* for defendant, argued, that when the words were

spoken in such manner as to lead to the conclusion, that they were not spoken in truth, they were not actionable. Starkie on Slander, 28.

Where the words spoken are capable of two meanings, it is for the jury to find, as matter of fact, in what sense they were spoken. 6 Cowen, 76 ; 3 Johns. 180 ; 3 Metc. 193.

The offence cannot be committed without malice. 13 Mass. 248 ; 15 Mass. 48 ; 3 Pick. 380 ; Selw. 1271 ; 3 Mass. 546.

In Massachusetts, it has been held, that although, where the actionable words were deliberately spoken, malice will be implied ; still a party will be allowed to show, that the words were spoken through heat or passion and without malice. And in 2 Wheat. Selw. 1271, it is said the action should not be brought, when the words are uttered in a passion.

The opinion of the Court, (WHITMAN, C. J. dissenting,) was drawn up by

SHEPLEY, J. — The case, as presented by the bill of exceptions, does not state the words alleged to have been spoken, the circumstances under which they were spoken, or the instructions to the jury in full. It is not apparent, whether the words were in themselves actionable or not ; but as no question of that kind is presented, the correct inference may be, that they were.

When the words are in themselves actionable, slander consists in communicating to the hearers, that the person, of whom they are spoken, has been guilty of some crime punishable by law. Without such a communication, there can be no slander in contemplation of law. Such a communication may be made by language, which according to its ordinary signification is unsuited to do it. On the contrary, language may be used, which according to its usual signification would do it, and yet no such communication be in fact made. That the circumstances, under which the words were spoken, may be shown by proof, and that the jury may infer from it, that words unsuited to do it, did in fact make such a communication, will not be denied.

Very numerous authorities might be cited, to sustain the position. By the application of the same principle, one may introduce proof of the circumstances, under which words suited in their ordinary signification, to charge another with the commission of crime, were spoken, and the jury may infer from such proof, that no such charge was made, and of course, that the speaker was not guilty of slander.

This position is also sustained by authorities not so numerous as those applicable to the former position, for the reason probably, that occurrences of this description, are not so frequent as those of the former.

Mr. Starkie says, " thus if the defendant call the plaintiff a thief, and it be doubtful under the circumstances, whether the term was meant to be applied in a felonious sense, it is for the jury to decide." 2 Stark. Ev. 461, ed. by Metc. He refers in a note to his authorities for the position. It will be sufficient to notice one of them. In the case of *Penfold* v. *Westcote*, 2 B. &. P. N. R. 335, the words were, " why don't you come out, you blackguard rascal scoundrel Penfold, you are a thief." The jury were instructed that the burden of proof, was on the defendant to show, that felony was not imputed by the word thief, and a verdict was found for the plaintiff. A motion was made to set it aside, because that word was not intended to impute felony, but was merely used with others in the heat of passion. Sir James Mansfield, C. J. said, " the jury ought not to have found a verdict for the plaintiff, unless they understood the defendant to impute theft to the plaintiff. The manner in which the words were pronounced, and various other circumstances might explain the meaning of the word; and if the jury had thought, that the word was only used by the defendant as a word of general abuse, they ought to have found a verdict for the defendant. Supposing that the general words, which accompany the word thief, might have warranted the jury in finding for the defendant, yet as they have not done so, we cannot say, that the word did not impute theft to the plaintiff."

In the case of *Christie* v. *Cowell*, Peake's Cases, 4, the words

were, " he is a thief, for he stole my beer." Lord Kenyon " directed the jury to consider, whether these words were spoken in reference to the money received and unaccounted for by the plaintiff, or whether the defendant meant, that the plaintiff had actually stolen beer."

In the case of *Rex* v. *Horne*, Cowp. 672, lord Mansfield said, it was the duty of the jury, to construe plain words according to their obvious meaning, and as every body, who reads must understand them, but the defendant might " give evidence to show, they were used upon the occasion in a different or qualified sense."

In the case of *Jarvis* v. *Hathaway*, 3 Johns. 180, the words proved were, " you are guilty of forgery," or " you are guilty of absolute forgery." The parties were members of a church. The words were spoken before two other members convened for the purpose of taking the second step in church discipline. With other directions the jury were instructed, " that the circumstances, under which the charge was made against the plaintiff, were proper to be taken into consideration to determine the intention, with which it was made." On a motion for a new trial, the instructions were decided to have been correct.

In the case of *Norton* v. *Ladd*, 5 N. H. 203, the words as laid in one form were, " Norton has taken a sable out of my trap ; he stole it, and I can prove it." The defendant offered to prove, that the sable being an animal *feræ naturæ*, was taken from the trap of the defendant under such circumstances as not to make it the subject of larceny, and that this was known to the persons, in whose hearing the words were uttered ; but the testimony offered was rejected. A new trial was granted, to admit the explanatory testimony.

In the case of *McKee* v. *Ingalls*, 4 Scam. 30, the words were, " You are a damned thief ; if you have got money, you stole it. I believe you are a damned thief. I believe you *will steal*." The jury were instructed, " that if the jury believe from the testimony, that Ingalls at the time he called McKee a thief, did not intend to impute felony to him, the words are

not actionable, and they must find for the defendant." The instructions were approved. The opinion of the Court states, that the question of the defendant's malice was a question of fact for the jury, upon consideration of all the facts and conversation, and that if they believed the words were spoken in heat and passion, and without intention to accuse of stealing any article of personal property, they must find for the defendant.

The observation made in 2 Stark. Ev. 464, ed. by Metc., that it is no answer to the action to show, that the words were spoken carelessly, wantonly, or in jest, is not at variance with this doctrine. Words may be thus spoken and communicate to the hearers, that the person named has been guilty of the offence indicated by them. Nor would defamatory words appear to be less suited to make such a communication, or to injure the reputation of the person named, if the motive of the speaker were to derive some private gratification, or emolument to himself.

The rule is correctly stated by Mr. Greenleaf, 2 Geenl. Ev. § 423. " If from the plaintiff's own showing, it appears, that the words were not used in an actionable sense, he will be non-suited. But if the plaintiff once establishes a *prima facie* case, by evidence of the publishing of language, apparently injurious and actionable, the burden of proof is on the defendant to explain it."

According to these authorities, the instructions in this case were suited to guide the jury to a correct result. For if the words in themselves actionable " were spoken under such circumstances as would not lead the persons present to believe, they were spoken as truth," they could not have communicated to those persons, that the wife of the plaintiff had been guilty of any crime. And if the jury were satisfied, that he did not make any such communication, it was their duty to find a verdict for the defendant. The remark made in the instructions respecting the words being " spoken under circumstances of excitement and anger," is fully justified by some of the decided cases. If it were not, it was immaterial. For it was unimportant, whether they were spoken under that or a different state

of feeling, if no criminal charge was made by them.   In such case, they might perhaps with entire propriety, be characterized as a mere ebullition of ungoverned temper ;" but it was of no importance, whether their character was properly described or not.   If they communicated no criminal charge, they " did not import malice, nor would they sustain a case like the present." For malice cannot be inferred or the action be sustained, when the language used makes no such communication.

*Exceptions overruled.*

Dissenting opinion by

Whitman, C. J. — This is an action of slander.   No question appears to have been made, but that the words charged as having been uttered were untrue; or that they were not actionable.   But the Judge charged the jury, that, if the words spoken were uttered under excitement and anger, and under such circumstances as would not lead the persons present to believe they were spoken as true, it should be accounted a mere ebullition of ungovernable temper ; and as such did not import malice ; and would not sustain a case for damages.   To this exception was taken.

There would seem to be no doubt, but that the ruling and instruction of the Judge would have been correct if they had applied only to diminish the damages to be recovered.   2 Greenl. on Ev. § 275.   But it has been considered, that " it is no answer to the action to show that the words were spoken carelessly, wantonly, or in jest," and that the act of a party " is not the less malicious, because his primary object is to derive some private gratification, or emolument to himself." 2 Starkie on Ev. 264.   Ordinarily a man's words are to be taken according to their manifest import ; and it can scarcely be reasonable to allow one to excuse himself for uttering slanderous words of another upon the ground that he was angry with him.   To allow of such a defence would be to encourage individuals to work themselves up to an excited state, and then expect to be allowed to slander those, against whom they might have a grudge, with impunity.   It is un-

doubtedly true, that words of mere heat and passion, imput-
ing no crime to one to whom they may be addressed may
not be actionable, especially if attended with no specific dam-
age. But if one, in a fit of anger, imputes a crime to another,
he cannot make use of his ill feeling to excuse himself; and
it cannot be admissible for him to pretend, that he did not in-
tend what his language imported; and cannot set up in de-
fence, that those who heard him did not believe what he said;
nor can it well be predicated of one, who utters reproachful
language against another, while infuriated with anger against
him, does not do it maliciously.

In *Bromage* v. *Prosser*, 4 B. & C. 321, Mr. Justice BAY-
LEY, in delivering the opinion of the Court, remarked, that
" malice, in common acceptation, means ill-will against a per-
son; but in its legal sense it means a wrongful act, done in-
tentionally, without just cause or excuse;" and that, " if I
traduce a man, whether I know him or not, and whether I
intend to do him an injury or not, I apprehend the law con-
siders it as done of malice, because it is wrongful and inten-
tional. It equally works an injury whether I meant to produce
an injury or not; and if I had no legal excuse for the slander,
why is he not to have a remedy against me for the injury it
produces?" And in *Hooper* v. *Trescott*, 2 Bing. N. C. 457,
Mr. C. J. TINDAL, in delivering the opinion of the Court,
says, " the existence of express malice is only a matter of in-
quiry where the injurious expressions, which are the subject
of complaint, are uttered upon a lawful occasion."

In the case of *Penfold* v. *Westcote*, cited by my brother,
the position laid down was undoubtedly correct, that the de-
fendant may show that felony was not imputed by the word
thief. He may show it was spoken under circumstances, that,
at the time, explained the meaning not to be what the word
alone would imply, as that the word thief was followed by
stating to what he alluded, as, for instance, cutting and carry-
ing away trees; or, as in the case of *Norton* v. *Ladd*, cited
from 5 N. H. Reports, of a wild animal, not the subject of
larceny. Undoubtedly the whole of the circumstances may be

introduced to elucidate the meaning of the speaker. It might be shown also, in defence, that the slander imputed was uttered under circumstances rendering it entirely excusable, as in the case cited from the 3d of Johns. In the case from Peake the words were, " he is a thief, for he stole my beer," and it appearing that the plaintiff was an agent of the defendant, the jury were instructed to consider whether the words were spoken in reference to the money received, and unaccounted for by the plaintiff, which would be merely a breach of contract, and should explain the meaning understood at the time of speaking.

The positions in *Rex* v. *Horne*, were undoubtedly well grounded. The first was that words should be taken in their obvious sense, but that, secondly, the defendant might prove they were used and understood in a different sense. Lord C. J. DeGrey, in delivering the opinions of the Judges, in that case to the House of Lords, remarked, " If courts of justice were bound by law to study for any possible or supposable case or sense, in which the words used might be innocent, such a singularity of understanding might screen an offender from punishment;" and, again, " it would be strange to say, and more so to give out, as the law of the land, that a man may be allowed to defame in one sense, and to defend himself by another;" and, further, that " the court and jury must understand the record as the rest of mankind do."

The defendant, in the case at bar, offered no proof, and no circumstances appeared tending to show, that the language used by him meant any thing other than it obviously imported. The only case cited in support of the opinion of my brethren, which has a direct tendency to that effect, is from the 4th of Scam., which I have not seen, but presume its purport is correctly represented ; and all I can say with regard to it is, that it seems to me to be wholly unsupported by any *dicta* or decision to be found elsewhere ; and, indeed, to be directly opposed to the current of authorities before cited. The exceptions, therefore, should, in my opinion, be sustained.