# ONAS SMITH, Respondent, v. MISSOURI FIDEL-ITY AND CASUALTY COMPANY, Appellant.

### Springfield Court of Appeals, June 17, 1915.

1. **LIBEL AND SLANDER: Innuendo: Construction: Not to be Changed.** In an action for libel plaintiff will not be allowed to start a fresh innuendo after the trial is begun, but must abide by the construction placed on the words in his petition.

2. ————: **Meaning of Words: Duty of Courts to Construe.** In an action for libel, if the words alleged are not reasonably susceptible of the defamatory meaning assigned to them, the court must so determine and direct a verdict.

3. ————: **Submitting Entire Publication.** In an action for libel the whole publication should be submitted as the law does not dwell on isolated passages but judges the publication as a whole.

4. ————: **Where Burden is on Defendant.** In an action for libel where the words in and of themselves charge the commission of a crime and it is sought to show that the context and circumstances carry an antidote to the poison, the burden of proof and evidence is on the defendant.

5. ————: **Where Burden is on Plaintiff.** But where no crime is charged and it is sought to inject the poison by proof of extraneous circumstances the burden is on the plaintiff.

6. ————: **Meaning of Publication: Obtaining Money by False Pretenses.** A person cannot be held to charge another criminally with attempting to obtain money under false pretenses when the means stated to have been employed is a suit in court.

7. ————: **Instructions.** In an action for libel and slander, when the publication is alleged to charge the crime of attempting to obtain money by false pretenses, it is error to submit the case on instructions designating but not defining that offense.

8. ————: **Action Based on Letter: False Pretenses.** Action for libel. Letter examined upon which the action was based, wherein defendant company explained its position in refusing to pay plaintiff's claim and *held* not to charge the crime of obtaining money by false pretenses.

9. ————: ————: **Privileged Communication: Express Malice to be Shown.** In an action for libel, where the communication is privileged, the plaintiff cannot recover in the absence of proof of express malice.

10. ———: ———: **When Not Actionable.** Action for libel based on statements in a letter written by an insurance company to a third person, a prospective agent of such defendant company, the letter explaining a charge of having stood on a technicality in refusing plaintiff's claim. The letter is examined and, under the circumstances set out, considered privileged and, express malice being absent, *held* not actionable.

Appeal from Greene County Circuit Court.—*Hon. Guy D. Kirby,* Judge.

REVERSED.

*John P. McCammon* for appellant.

*Howard Ragsdale* and *Patterson & Patterson* for respondent.

STURGIS, J.—This is a suit for libel in which plaintiff recovered $500 actual and $250 punitive damages. The plaintiff is a physician practicing his profession at Ash Grove, Missouri. The defendant was located at Springfield, Missouri, and issued to him a policy of insurance against loss of time from sickness. The plaintiff presented a claim under this policy and same was paid. Soon thereafter plaintiff presented a second claim which defendant contested on the grounds that the sickness claimed for was a mere continuation of the previous sickness for which it had settled in full and that if a new sickness the plaintiff had not given the defendant any notice of the same as required by the policy. This led to a lawsuit resulting in the defeat of plaintiff's claim.

Soon after this, the defendant, desiring a local agent at Ash Grove, Missouri, wrote a letter to J. N. Moore, a banker at that town, soliciting him to take such agency. To this letter Mr. Moore replied as follows: "Your letter at hand offering us the agency for the Mo. F. & C. Co. In reply will say that I do not think it advisable for me to do so for the following reasons: I think it would be better for some of your

stockholders to do so as they could doubtless look after it much better than I can. I also observe that there is some friction here on account of your company standing on a technicality in Dr. O. Smith's sickness. Should I have written his sick and accident policy I would probably have lost his friendship and a few good customers. I am not arguing his case *pro* or *con,* but want to tell you that I do not think a person in the banking business can afford to write insurance and be a go-between in misunderstandings and technicalities as is often the case with insurance companies. I will try to see you the first time I come to town."

This letter was referred to W. L. Taylor, defendant's general manager, and he wrote the following reply which is the basis of this suit: "Your letter of August 24th to Mr. McCanse has been handed to me and I think it would be an injustice to this company and its stockholders in your city, if I would permit a part of your letter to remain unanswered, and that is with reference to the claim made by Dr. O. Smith. The trouble with you people is that you don't seem to know the facts; if you knew the facts you would see at once that we handled the matter in the proper way.

"Dr. Smith had a policy in this company; he became sick and we paid him $48 without any objections whatever, and he signed a release, releasing us in full. *Dr. Smith had a relapse, which we learned was the continuation of the illness for which we had paid him, and which he had released us in full.* Quite a little while had elapsed and Dr. Smith gave us notice of the second illness. Remember, now, we had paid him $48 for the first illness, and he had paid into this company less than $6, but that made no difference. His first claim was just and all right and we paid it. We denied liability under the second claim on the ground that notice was not given us in proper time, as is required in this policy, and which is one of the conditions which

he agreed to do when he accepted the policy. He came back with a reply that he was too ill and was not in position to give us notice in time, and I suppose he made his attorney believe that statement, but we know differently, for the very reason that he had been in our office and had paid us a premium on his policy and had ample opportunity to notify us that he had been ill again and wanted to make the second claim. Now that is not a technicality, and I thought best to write you and give you the facts in the case for fear that you might be prejudiced against this company.

"The Missouri Fidelity and Casualty Company has taken a high standing in the insurance world. We are trying our best to treat our policyholders right. In this case we treated the doctor just as well as we possibly could. At our own expense we notified the doctor's attorney when the claim was ready for trial.

"We had no objections to trying it without a jury. We let them have their own way about it. It was not necessary for us to use any witnesses ourselves, as we proved all we wanted to prove by the doctor himself. We.did not try to abuse the doctor when he was on the witness stand. We handled him just as nice as we knew how. I think he feels now that we were absolutely right in denying his claim and in fighting him as we did.

"I am sending a copy of this letter to a couple of the stockholders in your city so that they may know the facts. *This company is paying its claims promptly and it is not hard for any one to get what rightfully belongs to them, but we will fight a fraudulent claim to the end.*" (Italics ours.)

The plaintiff in his petition alleges the publication of the words in italics and by innuendo alleges that thereby defendant meant to charge and did charge and was understood to charge the plaintiff with the crime of attempting to obtain money by false pretenses. The answer sets out the circumstances under which was.

written the letter of which the alleged libelous words formed a part and states that when the whole letter is taken together the same is not libelous or susceptible of the meaning ascribed thereto and that the same does not and cannot be held to charge plaintiff with the crime mentioned. The answer further claims that the writing of said letter was done without any intent to injure plaintiff but in the promotion and protection of the defendant's business and to maintain its reputation and standing, and that said letter was therefore privileged.

So far as the evidence shows, Mr. Moore, who was a friend of plaintiff, shortly after receiving the letter and without showing it to anyone, handed it to the plaintiff. The plaintiff says that he gave it to his attorney in a few days in whose custody it remained until the trial. There is evidence that both the lawsuit of plaintiff against defendant on his sick benefit claim and this letter in reference thereto were largely discussed in the town of Ash Grove. The witnesses who testified to having seen and read the letter say it was shown to them by plaintiff or his attorney. Several witnesses were allowed to testify, over defendant's objections, as to their understanding of the meaning of this letter. One witness said: "My understanding was from the tone of the letter he presented a fraudulent claim, and they did not propose to pay a fraudulent claim, and would fight it; I think the letter itself is plain on the construction of it." Another witness testified: "It appeared to me they were charging him with trying to obtain money under false pretenses—an unjust claim. All I understood about it was there was an unjust claim he was trying to collect." The court instructed the jury that the copies of the letter sent to the stockholders are privileged and afford no ground of action but refused to so declare as to the original letter to Moore.

Many errors are assigned on the sufficiency of the petition, the admission of evidence, and the giving

and refusal of instructions. There are, however, questions going deeper than this and which we think are fatal to plaintiff's recovery.

The plaintiff stakes his whole case, both in the trial court and in this court, on the proposition that the alleged libelous words under the facts shown imputed to him the commission of the crime of attempting to obtain money by false pretenses and were so intended by the writer and understood by the readers. On this issue plaintiff wages his battle and on this issue he must win or lose; mindful of the rule of law that a plaintiff will not be allowed to start a fresh innuendo after the trial is on, but must abide by the construction placed on the words in his petition. [Newell on Slander & Libel (2 Ed.), p. 629, sec. 39; Skelley v. Railroad, 176 Mo. App. 156, 161 S. W. 877, and cases cited.]

It is equally well settled that if the words alleged are not reasonably susceptible of the defamatory meaning assigned to them, the court must so determine and direct a verdict. [Branch v. Knapp & Co., 222 Mo. 580, 121 S. W. 93.] It is for the court to say whether a publication is capable of the meaning ascribed to it by the innuendo. Newell on Slander & Libel (2 Ed.), p. 290, sec. 4, where the author adds: "The whole libel should be submitted to the jury. A word at the end may alter the whole meaning. So if in one part appears something to the plaintiff's discredit, in another something to his credit, the 'bane' and the 'antidote' should be taken together. The law does not dwell on isolated passages, but judges of the publication as a whole." [25 Cyc. 542, 545; St. James Military Academy v. Gaiser, 125 Mo. 517, 527, 28 S. W. 851.]

In a case where one person accused another of stealing corn, using words slanderous *per se*, but on every occasion of speaking the same stated to the hearers the fact that the corn was grown by plaintiff on leased land and sold by him in violation of his agree-

ment to apply the same on the rent, "thus sending an antidote along with the poison, and showing a mistaken view of the law, rather than a malicious purpose, the plaintiff cannot recover." [Hall v. Adkins, 59 Mo. 144.] In Israel v. Israel, 109 Mo. App. 1. c. 376, 84 S. W. 453, this language is used: "Actionable words may be uttered concerning a party with such explanatory statements, or in connection with such facts, as make it clear the words were neither used nor taken by listeners in their actionable sense; in which case they lose their actionable quality and a party suing on them cannot recover. [Trimble v. Foster, 87 Mo. 49; Hall v. Adkins, 59 Mo. 144; Bridgman v. Armer, 57 Mo. App. 528; Richey v. Stenius, 73 Mich. 563; Haynes v. Haynes, 29 Maine 247; Shull v. Raymond, 23 Minn. 66; 2 Greenleaf, Evidence, sec. 43; 18 Am. and Eng. Ency. Law (2 Ed.), p. 987.]"

Here the alleged actionable words do not contain any of the words "by false pretenses," or even "obtaining money"—the offense alleged to be charged by the innuendo. All this must be inferred, if at all, from the language used in the letter with the aid of extraneous circumstances surrounding the parties. There is much difference in a case where the words used in and of themselves charge the commission of a crime, and it is sought to show that the context and circumstances carry an antidote to the poison and reduce the natural meaning to one of innocence, and a case where, as here, no crime is charged in terms but the poison is sought to be injected by proof of extraneous circumstances and the natural meaning of the words thereby enlarged. In the first case the burden of proof and evidence is on the defendant while in the other on the plaintiff.

What facts are conveyed by the letter in question to every one reading it? The party receiving it had been solicited to become defendant's agent in his town and had written: "I also observe that there is some

friction here on account of your company (defendant) standing on a technicality in Dr. O. Smith's (plaintiff) sickness." The defendant replying to this letter states that: "The trouble with you people is that you don't seem to know the facts." It then proceeds to state that plaintiff's first claim for sickness was paid; that he then made a second claim which defendant says it learned was a relapse and continuation of the first sickness for which it had settled in full; that defendant denied liability on the ground of notice not being given in proper time as required by the policy; that plaintiff's excuse for not giving the notice on account of being too ill to do so was not correct; that the defendant did not consider this defense a technicality; that a trial was had in court on plaintiff's claim without a jury; that defendant did not need to put in any proof, as plaintiff's evidence lost his case; that defendant thinks the plaintiff is now convinced that defendant was right in denying the claim and in fighting it. The defendant then winds up the letter, in a separate paragraph referring to its general policy in paying claims, to the effect that it pays promptly all just claims, meaning evidently such as appear just to it, and, as before explained, when proper notice is given, but that it fights "fraudulent claims" to the end. We will grant that it is fair to say that defendant intended to characterize the claim of plaintiff as belonging to this latter class and it is also evident that the defendant included in the term "fraudulent claims" those where no proper notice had been given and no good excuse shown for not giving such notice.

We must bear in mind that plaintiff does not sue on the theory that this letter "tends to deprive him of the benefits of public confidence" by imputing a lack of business integrity or of being dishonest or unfair in trying to collect this claim. The whole charge is that plaintiff was thereby charged with the crime of attempting to obtain money by false pretenses and we

are referred to the statutory definition of that crime as found in section 4765, R. S. 1909. It seems to us, however, to involve an absurdity to say that one is accused of obtaining or attempting to obtain money by false pretenses in a criminal sense when the means by which the money is sought to be obtained is stated to be a suit in court. In State v. Fraker, 148 Mo. l. c. 166, 49 S. W. 1017, the court said: ''Besides, it has been ruled that even where a judgment has been obtained by consent through false pretenses, and the money collected under such judgment, that this is not obtaining money under false pretenses. [Com. v. Harkins, 128 Mass. 79.''] A suit on a claim, however unjust or fraudulent it may be, cannot be classed along with ''trick or deception,'' ''the confidence game,'' ''bogus check,'' etc., as a means of obtaining money by false pretenses. One may be guilty of perjury or bribing witnesses or a like offense, in connection with such suit, but the suit or evidence adduced therein cannot be the criminal false pretense by which money is obtained. One who brings a suit on a claim is at least asserting that what he claims is justly due him and challenges the other party to meet the same, and this negatives the idea that he is trying to obtain it by false pretenses. When one characterizes a claim which is the subject of a suit as ''fraudulent,'' it cannot be construed to charge the crime of attempting to obtain money by false pretenses. This would seem to follow from the rule that judgments rendered in a regular proceeding in court are vitiated by fraud only in case the fraud pertains to the procurement of the judgment and not to the cause of action or evidence. [Hamilton v. McLean, 139 Mo. 678, 41 S. W. 224; Covington v. Chamblin, 156 Mo. 574, 587, 57 S. W. 728; Wabash R. Co. v. Mirrielees, 182 Mo. 126, 141, 81 S. W. 437; Murphy v. De France, 101 Mo. 151, 13 S. W. 756.] All the witnesses knew from this letter that plaintiff had sued the defendant on this claim and that defendant had defeated him in a court

trial and that defendant was seeking to justify its action in defending against the claim on the ground of a want of a proper notice in connection with its information that the claim was based on a continuation of a sickness for which it had settled in full. Under such circumstances the characterizing of the claim as being one of the "fraudulent" ones which it was the policy of the company to fight cannot be construed into charging plaintiff with the crime of obtaining or attempting to obtain money by false pretenses.

We think it is also true that while the witnesses said they understood the letter to mean that plaintiff "presented a fraudulent claim," "was passing a fraudulent claim and trying to obtain money from a sick benefit under false pretenses," "was trying to obtain money under false pretenses—an unjust claim" etc., these expressions of understanding are loosely worded and do not show that the witnesses understood the words in the criminal sense. [Branch v. Knapp & Co., 222 Mo. 580, 597, 121 S. W. 93.] We observe in this connection that in instructing the jury the court did not define the crime of obtaining or attempting to obtain money by false pretenses or the essential elements thereof but left the jury to adopt its own idea of what constitutes that offense. [Krup v. Corley, 95 Mo. App. l. c. 650, 69 S. W. 609.]

We think also that the letter in question is a privileged communication under the facts shown. There is no pretense that defendant was not in good faith seeking to have Mr. Moore, to whom the letter was written, become its agent or that it was using this business communication as a mere pretext to defame the plaintiff. The writer of the letter was a stranger to plaintiff. There is no reason to say that Mr. Moore did not in good faith mention in his letter the fact that he shared with others the belief that the defendant had taken advantage of a mere technicality to defeat plaintiff's claim. This called on defendant to justify itself

in that matter and in so doing it was authorized to state matters which it honestly believed to be true though in fact libelous. [Easley v. Moss, 9 Ala. 266; Brow v. Hathaway, 95 Mass. 239.] "A communication made by a person is privileged which a due regard to his own interest renders necessary. He is entitled to protect himself." [Newell on Slander & Libel (2 Ed.), sec. 108, p. 509.] And again, in sec. 110, p. 510, this same author says: "A communication by a person immediately concerned in interest in the subject-matter to which it relates, for the purpose of protecting his own interest, in the full belief that the communication is true and without any malicious motive, is held to be excused from responsibility in an action for a libel; and this privilege is not defeated by the mere fact that the statements were made in the presence of others than the parties immediately interested; nor that they were intemperate or excessive from over-excitement." [See also 25 Cyc. 398.] In Holmes v. Fraternal Union, 222 Mo. 556, 121 S. W. 100, this question is thoroughly discussed and the court held that if the alleged slanderous words were written with the view of protecting some interest pertaining to defendant's business, and were relevant and proper in that connection, and were made in good faith upon a proper occasion, with a proper motive and in the honest belief that same were true, the same constitute a privileged communication. [See Finley v. Steele, 159 Mo. 299, 305-7, 60 S. W. 108.] In these and other cases the rule is announced that where the communication is privileged the plaintiff cannot recover in the absence of proof of express malice, and this is wholly wanting here. [25 Cyc. 412; Newell on Slander & Libel, 2 Ed., p. 391.]

It results that the judgment should be reversed and it is so ordered.

*Farrington, J.,* concurs. *Robertson, P. J.,* concurs in the result.