TABER v. ARANSAS HARBOR TERMINAL RY. et al. (No. 6349.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 25, 1920. Rehearing Denied March 24, 1920.)

1. **LIBEL AND SLANDER** ⬙1—WHETHER PUBLICATION LIBELOUS DETERMINED BY STATUTE.

The statutes of Texas (Rev. St. 1911, art. 5595) give a full and complete definition of libel, and no other definitions can be considered in arriving at a conclusion as to whether a publication constitutes libel.

2. **LIBEL AND SLANDER** ⬙16—LETTER TO RAILROAD COMMISSION DENYING CHARGE OF DISCRIMINATION LIBELOUS PER SE.

Letter by vice president of railroad to Railroad Commission denying charge of discrimination made by plaintiff and stating in substance that plaintiff was unreliable, that he was a disturber in the community, and that the better element of the community would not associate with him, was libelous per se under Rev. St. 1911, art. 5595, as tending to expose plaintiff to contempt or ridicule and financially injure him and impeach his integrity and reputation.

3. **LIBEL AND SLANDER** ⬙41—"QUALIFIED PRIVILEGE" DEFINED.

"Qualified privilege" comprehends all bona fide communications upon any subject-matter in which the author has an interest or a duty to perform to another having a corresponding duty.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Qualified Privilege.]

4. **LIBEL AND SLANDER** ⬙36—"ABSOLUTE PRIVILEGE" CONFINED TO CERTAIN CASES.

"Absolute privilege" is confined to cases in which the public service or the administration of justice requires complete immunity from being called to account for language used, such as language used in legislative bodies, in debates, in reports of military officers on military affairs to their superiors, language used by judges on the bench and witnesses on the stand.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Absolute Privilege.]

5. **LIBEL AND SLANDER** ⬙36—LETTER TO RAILROAD COMMISSION IN ANSWER TO CHARGE OF DISCRIMINATION NOT ABSOLUTELY PRIVILEGED.

The Railroad Commission of Texas is not a judicial or quasi judicial tribunal, and a letter written by vice president of railroad to commissioner denying plaintiff's charge of discrimination and libeling plaintiff was not absolutely privileged.

6. **LIBEL AND SLANDER** ⬙46, 51(1)—LETTER TO RAILROAD COMMISSION DENYING CHARGE OF DISCRIMINATION ONLY QUALIFIEDLY PRIVILEGED.

Letter written by vice president of railroad to Railroad Commission denying plaintiff's charge of discrimination and libeling plaintiff cannot be protected except in a qualified sense, and, if malice is shown to have actuated using libelous words clearly not necessary to defense, vice president and railroad are liable for provable damages.

Error from District Court, Nueces County; W. B. Hopkins, Judge.

Action by C. C. Taber against the Aransas Harbor Terminal Railway and another. Instructed verdict for defendant Railway, and plaintiff brings error. Reversed and remanded.

T. O. Woldert, of Houston, and J. D. Todd, of Corpus Christi, for plaintiff in error.

Denman, Franklin & McGown, of San Antonio, for defendants in error.

FLY, C. J. This is an action for damages accruing by reason of a libel published by J. C. Moore, instituted by plaintiff in error, who will be designated as plaintiff, against defendants in error, the Aransas Pass Terminal Railway and J. C. Moore, its vice president, herein called defendants. The petition alleged that plaintiff was selling merchandise in the town of Port Aransas, Tex., in 1913; that plaintiff, at the solicitation of citizens of said town, addressed a communication to the Railroad Commission of Texas calling attention to the fact that the railway company had discriminated against the town of Port Aransas and its citizens; that plaintiff was not actuated by malice or ill will towards any one, but merely desired to protect the interests of himself and his fellow citizens. It was further alleged that the railway company, through its vice president, J. C. Moore, wrote a letter to the Railroad Commission denying the charge of discrimination, and containing the following matter, alleged to be libelous:

"Provided the complaint emanated from one C. C. Taber, I would add that it seems a pity that the commission's valuable time should be taken up by the consideration of complaints from such a source as in this instance. Mr. Taber is a merchant of Port Aransas, selling dry goods and notions, and some time prior and up to the time the Port Aransas paper suspended publication about three weeks ago advertised his stock for sale to close out, due, as I understand it, to lack of trade owing to his being a trouble maker of the worst kind and to such an extent that the better element of Port Aransas citizens are out with him."

⬙For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The court, after hearing the evidence, instructed the jury to return a verdict for the defendant Aransas Harbor Terminal Railway.

[1] The statutes of Texas give a full and complete definition of libel, and no other definitions can be considered in arriving at a conclusion as to whether a publication constitutes libel. The definition is:

"A libel is a defamation expressed in printing or writing, or by signs and pictures, or drawings, tending to blacken the memory of the dead, or tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to impeach the honesty, integrity, or virtue, or reputation of any one, or to publish the natural defects of any one and thereby expose such person to public hatred, ridicule, or financial injury." Rev. Stats. art. 5595; Koehler v. Dubose, 200 S. W. 238.

[2] Undoubtedly on its face the language quoted was, under the statute, libelous. It was, as alleged by innuendo, a charge of unreliability, that his representations were not worthy of serious consideration, that he was a disturber in the community, and that the better element of the community would not associate with him. It clearly had the tendency to expose plaintiff to contempt or ridicule and financially injure him and would impeach his integrity and reputation. It was libelous per se. Cranfill y. Hayden, 97 Tex. 544, 80 S. W. 609. It was not claimed that the charges made by Moore were true. The only justification for the charges presented was that the letter in which the charges appeared was privileged, because addressed to the Railroad Commission of Texas, in answer to charges preferred by plaintiff against the railway company.

Privileged communications are not defined in the statutes of Texas, except as to publications by newspapers or periodicals, but the statute provides that nothing therein contained shall "take away any now or at any time heretofore existing defense to a civil action for libel, either at common law or otherwise, but all such defenses are hereby expressly preserved." That language was added by an amendment of April 9, 1917 (Acts 1917, c. 206, § 1), of article 5598, Vernon's Tex. Civ. and Crim. Stats. 1918 Supp. Koehler v. Dubose, herein cited. It follows that resort must be had to authorities other than the statute to ascertain whether or not a communication addressed to the Railroad Commission under the facts of this case is a privileged communication.

[3, 4] Privileged communications are divided into two classes, absolute and qualified, and the great underlying principle upon which each class rests is public policy, although peculiarly so in the case of absolute privilege. In the latter case it is deemed best to allow absolute freedom and protection to any and all utterances or publications, even though false and malicious for the sake of the public good, and is justified on the ground that in civilized society individual personal rights must be surrendered for the public good. This class of privileged communications under free institutions must be greatly restricted. Qualified privilege exists in a much larger number of cases and comprehends all bona fide communications upon any subject-matter in which the author of the communication has an interest, or a duty to perform to another having a corresponding duty, and such duty may not only to a legal one, but also a moral or social one. On such an occasion malice is not presumed, but must be proved. Absolute privilege is confined to cases in which the public service or the administration of justice requires complete immunity from being called to account for language used, such as language used in legislative bodies, in debates, in reports of military officers on military affairs to their superiors, language used by judges on the bench and witnesses on the stand. Newell, Slander & Libel, §§ 505–510.

[5] It is the claim of the defendants herein that, the Railroad Commission of Texas, being a quasi judicial body, and the language used by J. C. Moore being used in the course of a proceeding before that body, it was privileged. It is the contention of the plaintiff that, granting that the libelous letter was a pleading filed in the course of a judicial proceeding, there is no absolute protection for a party in a judicial proceeding, but in order to obtain such protection the defamatory words must be applicable, pertinent, or relevant to the matter in hand.

We are of the opinion that under the statute the Railroad Commission of Texas is not a judicial tribunal or what is termed by courts quasi judicial, and that the parties to a suit or complaint therein would not receive the immunity of pleaders in a court of justice. The Legislature created the Railroad Commission, which is recognized and provided for by the state Constitution (article 16, § 30), and invested it with power to adopt rates, charges, and regulations to govern and regulate railroad freight and passenger tariffs, to correct abuses and prevent unjust discrimination and extortion in rates of freight and passenger tariffs on the different railroads in this state, and to enforce the same by having the penalties inflicted by proper courts having jurisdiction. The performance of these duties would undoubtedly involve examination and some discretion, but it cannot be assumed that the letter was written in a judicial proceeding, in answering charges made of discrimination by plaintiff. We might consider the case as one of qualified privilege which might arise on the ground that the letters were written by a party having an interest in the subject which he communicated to the Railroad Commission having a corresponding interest in the matter.

The accusations made by defendant might also be justified if made in good faith to obtain governmental redress. In such cases the right of petition is secured by constitutional guaranty. Koehler v. Dubose.

The Railroad Commission can exercise none but ministerial or executive powers, not having the power to enforce any of its orders, but only given by statute the right to invoke the aid of courts of justice to put its orders into execution. The fact that an officer must determine whether the state of facts demands action on his part does not operate to convert it into a judicial act. An act is none the less ministerial because some discretion is given the officer whose duty it is to perform it as regards the means or method to be employed. Indeed, the fundamental principle as to the separation of the powers of government is applied with greater strictness in reference to the delegation of judicial powers to nonjudicial officers than in analogous cases of delegating legislative powers. R. C. L. § 173, p. 173. It has been held that judicial power is not delegated to civil service commissioners by giving them authority to investigate complaints against officers and matters as to enforcement of the civil service law, with the right to administer oaths, secure the attendance of witnesses, and exercise administrative powers necessary to execute the civil service act. R. C. L. vol. 5, p. 611. We fail to see that the civil service commission is not an organization of equal dignity and power to a state Railroad Commission. It has no powers except those clearly named in the law creating it and has no power whatever to enforce its order, but can only appeal to a court of competent jurisdiction. The powers of the commission are executive and administrative, and not judicial. It occupies the same status as a land board of the tax commissioner or comptroller. Article 5 of the Texas Constitution provides what courts shall be established and defines their jurisdiction. Railway v. Shannon, 100 Tex. 379, 100 S. W. 138, 10 L. R. A. (N. S.) 681. The commission may exercise what are termed by some courts quasi judicial functions, but that would not bring the acts of commission within the purview of judicial procedure mentioned in text books and decisions.

Appellee cites the cases of Runge v. Franklin, 72 Tex. 585, 10 S. W. 721, 3 L. R. A. 417, 13 Am. St. Rep. 833, and Connellee v. Blanton,

163 S. W. 404, as sustaining its contention that complaints and answers thereto are privileged because filed in a judicial proceeding or quasi judicial proceeding. In the case first named the libel was predicated on a petition filed in the district court, a court recognized by the Constitution. The other case was one in which the charge of libel was based on language used in an application for a pardon filed with the Governor of Texas, and it was held that an application for a pardon filed with a Governor was absolutely privileged, and the case of Runge v. Franklin is invoked to sustain it. It does not do so, and we do not assent to the proposition that a petition to a Governor can be placed on the same footing as a pleading in a court and be absolutely privileged. The decision is placed on the ground that the application for a pardon was an effort to annul a judgment, but a pardon does not perform that office, but merely graciously relieves a person from the penalty inflicted by the judgment. However that may be, a petition or answer addressed to the Railroad Commission of Texas cannot be held to be absolutely privileged on the ground that it is given its powers by the Constitution as the pardoning power is given to the Governor. We adhere to our ruling in Koehler v. Dubose that, while the right to apply to governmental agencies is given by the Constitution, the right cannot be made the pretext for attacks upon the character or reputation of others.

[6] This court held in that case that it could be distinguished from the Connellee v. Blanton Case on the ground that the applicant for the pardon was seeking to obtain relief from the unlawful act of an officer of the state, and the same can be said in this case. This in an effort to seek redress before the commission as against the acts of a corporation, and the papers therein filed cannot be protected except qualifiedly. If malice is shown to have actuated the defendants in using libelous words clearly not necessary to the defense, they are liable for damages, and they could be recovered if proved.

The truth of the statements made by plaintiff were alone before the Railroad Commission, and the attack on the temper or disposition of plaintiff was gratuitous and uncalled for, and the cause should have been submitted to the jury.

The judgment is reversed, and the cause remanded.