### TIMES PUB. CO. v. RAY. (No. 366.) *

Court of Civil Appeals of Texas. Eastland.
Nov. 25, 1927.

Rehearing Denied Jan. 6, 1928.

1. **Libel and slander ⟨key⟩19—In determining whether portion of article is libelous as matter of law, entire article must be considered, giving words significance given them by readers.**

In determining whether portion of newspaper article is libelous as a matter of law, the article as a whole must be considered, giving to all words therein the significance which would be given them by those who read the article.

2. **Libel and slander ⟨key⟩19—Portion of article stating that plaintiff had been arrested for perjury held not actionable, where entire article showed that he was arrested for false swearing.**

Portion of newspaper article stating that plaintiff had been arrested on charge of perjury *held* not actionable where article as a whole disclosed that basis of charge against plaintiff was affidavit made in connection with sale of stock of merchandise under Bulk Sales Law and that plaintiff was arrested on charge of false swearing.

3. **Libel and slander ⟨key⟩16—Only statutory definition of libel can be considered in determining libelous character of publication (Rev. St. 1925, art. 5430).**

No definition of libel can be considered other than that made by Rev. St. 1925, art. 5430, in determining whether publication is libelous, since word is fully defined in statute.

4. **Libel and slander ⟨key⟩16—Article which truthfully stated that plaintiff had been arrested but falsely stated that he was held in jail in lieu of bond held libelous as matter of law.**

Newspaper article, which was truthful in stating that plaintiff had been arrested, but was false in stating that he had been lodged in jail and was held in lieu of $1,000 bond, *held* libelous as matter of law, where it disclosed that criminal complaint was filed in town where plaintiff had lately conducted mercantile business.

5. **Libel and slander ⟨key⟩124(8)—Instructions as to matters to be considered in determining damages for libel held error as failing to limit recovery to damages resulting from untruthful portion of publication.**

Where newspaper article truthfully stated that plaintiff had been arrested but libelously stated that plaintiff had been lodged in jail and was being held in lieu of $1,000 bond, instruction that jury, in determining damages for libel, should consider any pecuniary loss or loss of business and any mental anguish, humiliation, or injury to reputation which was direct and proximate result of publication, *held* error in failing to limit recovery to damages resulting from false portion of publication.

6. **Libel and slander ⟨key⟩42(1)—Newspaper article concerning criminal charges held not privileged as account of judicial proceedings or other official proceeding in administration of law (Rev. St. 1925, art. 5432).**

Newspaper article, truthfully stating that plaintiff was arrested but falsely stating that he was placed in jail and held in lieu of $1,000 bond, which had not been made, *held* not privileged as "fair, true, and impartial account of the proceedings in a court of justice * * * or any other official proceeding authorized by law in the administration of the law," under Rev. St. 1925, art. 5432.

7. **Libel and slander ⟨key⟩48(2)—Newspaper article concerning criminal charges held not privileged as comment on acts of public officials and other matters of public concern (Rev. St. 1925, art. 5432).**

Newspaper article, truthfully stating that plaintiff had been arrested but falsely stating that he had been lodged in jail and was held there in lieu of $1,000 bond, which had not been made, *held* not privileged as "reasonable and fair comment or criticism of the official acts of public officials and of other matters of public concern furnished for general information" under Rev. St. 1925, art. 5432.

8. **Libel and slander ⟨key⟩41—Newspaper article, truthfully stating that plaintiff was arrested but falsely stating that he was held in jail in lieu of bond, held not qualifiedly privileged.**

Newspaper article, which truthfully stated that plaintiff had been arrested but falsely stated that he had been placed in jail and was held there in lieu of $1,000 bond, which had not been made, *held* not qualifiedly privileged.

9. **Libel and slander ⟨key⟩111—Evidence of private apology for libelous article held immaterial, where only actual damages were demanded.**

Admission of evidence of offer to apologize and of apology made by agent of newspaper company after publication of libelous article *held* error, where only actual damages were demanded, since private apology could show only that party offering it had no personal ill will, which was immaterial.

10. **Libel and slander ⟨key⟩116—Expenses of trips with one with whom plaintiff had done business prior to libel held not element of actual damages.**

Testimony of plaintiff that he had spent about $1,000 in making trips with a man with whom he had done business prior to publication of libel for purpose of explaining away its effect *held* properly excluded; such damages being too remote and not proper measure of damage.

---

⟨key⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted by Supreme Court March 14, 1928.

**11. Evidence ⟨key⟩237—Testimony that third party stated that newspaper should pay for libel held inadmissible, not being binding on plaintiff.**

Admission of testimony that third party made statements that newspaper company should pay plaintiff for libelous publication *held* error; statements not being binding on plaintiff.

**12. Evidence ⟨key⟩472(1)—Testimony that witness gathered impression from article that plaintiff was probably guilty of perjury held inadmissible as invading province of jury.**

Testimony of witness that his impression from reading newspaper article was that it was probably true that plaintiff was in fact guilty of perjury *held* properly excluded as invading province of jury.

**13. Libel and slander ⟨key⟩104(1)—Testimony that publication of libel was without ill will held admissible, though no exemplary damages were sought, where plaintiff alleged malice.**

Testimony of agent of newspaper company that in publishing libelous article newspaper company had no ill will *held* admissible, though no exemplary damages were sought, where plaintiff alleged that article was published maliciously.

On Rehearing.

**14. Libel and slander ⟨key⟩80—Petition for libel might declare on portion only of alleged libelous article.**

It was not necessary that petition for libelous newspaper article should declare upon the entire article, but it might declare upon portion only.

Appeal from District Court, Stephens County; C. O. Hamlin, Judge.

Action for libel by E. E. Ray against the Times Publishing Company. From a judgment in favor of plaintiff, defendant appeals. Reversed and remanded.

Conner & McRae, of Eastland, for appellant.

Hawkins, Hawkins & David, of Breckenridge, for appellee.

HICKMAN, J. Appellee recovered judgment against appellant in the court below for $4,000 actual damages on account of the publication by appellant in the Eastland Daily Telegram on May 28, 1926, of the following item, alleged by appellee to be libelous per se:

*"Former Eastland Dealer Arrested under Sales Act.*

"E. E. Ray, former owner of the Eastland Music Shop and now conducting a business at Breckenridge, was arrested and placed in jail last night on charges of *false swearing and* perjury. He is held in lieu of $1,000.00 bond which has not been made. It is alleged that when Ray sold his business in Eastland he appeared before Judge Sam Day and swore that he had paid off all creditors and that the business was free from incumbrance. Later it developed that several were unpaid and arrest on this occa-

sion was staved off when Ray paid off and it was after this that Ray took the oath before Judge Day that the place was clear.

"Since then, however, Judge Day stated, other bills have come in *and the arrest of Ray was ordered under the Bulk Sales law."*

The italics are ours, and are used to denote those portions of the published article which were not declared upon in appellee's petition; stars being inserted in the petition to indicate that omissions were being made.

The facts disclosed by the record are that the first affidavit made by appellee regarding his creditors was before the county judge of Eastland county and the second was before Sam Day, justice of the peace at Eastland. A complaint was lodged against him after the first affidavit was made; the offense charged, being labeled "swindling." Another complaint was filed with Mr. Day after the making of the second affidavit; the offense described therein being false swearing. After this second complaint was filed either Mr. Day or some member of the sheriff's force at Eastland called the sheriff's office at Breckenridge by long-distance telephone and requested that appellee be taken into custody. A deputy sheriff at Breckenridge at once called at appellee's place of business, but, not finding him there, left instructions for him to call the sheriff's office upon his return. Shortly thereafter appellee returned, called the sheriff's office, and then went there in person, where he was taken into custody by the deputy. He was not placed in jail, but, at his request, was taken to the office of his attorneys in Breckenridge and left with said attorneys under their agreement to be responsible for him. In a short time a bond was prepared, which was approved by the sheriff at Breckenridge, and appellee, in company with one of his attorneys, drove to Eastland, presented the bond to the justice of the peace, Sam Day, and was released. The complaint did not charge perjury, and appellee was not placed in jail.

Omitting the formal parts and parts unnecessary to consider, the charge of the court was as follows:

"You are instructed that the statements in the article published in the Eastland Telegram of May 28, 1926, of the effect that the plaintiff was held in jail in lieu of $1,000 bond and that he had been charged with perjury, are libelous as a matter of law; and the law further presumes that the plaintiff sustained nominal damages, but leaves it to your consideration what amount, if any, shall be given as compensation for injury actually sustained thereby.

"Now, bearing in mind the above, you will answer the following question, and have same signed by your foreman, which answer will constitute your verdict in this case: What sum of money, if paid now in cash, would adequately compensate the plaintiff for injuries done him by the publication of said libelous matter?'

"In answering the foregoing question, you

are instructed that you may take into consideration any pecuniary loss or loss of business, if any, that plaintiff has suffered as a direct and proximate result of the publication of said libelous matter, and also any mental anguish, humiliation, or injury to his reputation which he suffered, if any, as a direct and proximate result of the publication of such libelous matter."

[1] The first question to determine is whether the statement that appellee was charged with perjury is libelous per se. In determining whether this particular statement carved out of the article is libelous as a matter of law, the article as a whole must be considered, giving to all of the words contained therein that significance which would be given them by those who read the statement. In arriving at the sense in which defamatory language is used, it is necessary to consider the entire publication. A party will not be permitted to carve out isolated words or phrases and have them considered without reference to their settings. 17 R. C. L. § 54, pp. 313, 314; 36 C. J. § 22b, pp. 1157, 1158; Fawsett v. Clark, 48 Md. 494, 30 Am. Rep. 481; Bathrick v. Detroit Tribune Co., 50 Mich. 629, 16 N. W. 172, 45 Am. Rep. 63; Yakavicze v. Valentukevicious, 84 Conn. 350, 80 A. 94, Ann. Cas. 1912C, 1264; 36 C. J. § 15b, p. 1150; Smith v. Mo. Fidelity & Casualty Co., 190 Mo. App. 447, 177 S. W. 737; Israel v. Israel, 109 Mo. App. 376, 84 S. W. 456.

In the case of Bathrick v. Detroit Tribune Co., supra, the article distinctly charged the plaintiff with three criminal offenses; namely, seduction, adultery, and criminal abortion. In the opinion by Justice Cooley it was held that the three charges of criminal conduct were substantially one, charging in effect one piece of criminal conduct and not unconnected charges.

In the case of Yakavicze v. Valentukevicious, supra, this language is used:

"To say of one, 'You murdered my brother; he never intended to shoot you when he drew his pistol on you,' is not a charge of murder, since the meaning of the charge is controlled by the occurrences which preceded and occasioned the killing."

In the case of Israel v. Israel, supra, this language is used:

"Actionable words may be uttered concerning a party with such explanatory statements, or in connection with such facts, as make it clear the words were neither used nor taken by listeners in their actionable sense; in which case they lose their actionable quality, and a party suing on them cannot recover."

Many authorities supporting the statement are cited in the opinion.

In the case of Smith v. Mo. Fidelity & Casualty Co., supra, this language is used:

"In a case where one person accused another of stealing corn, using words slanderous per se, but on every occasion of speaking the same stated to the hearers the fact that the corn was grown by plaintiff on leased land and sold by him in violation of his agreement to apply the same on the rent, 'thus sending an antidote along with the poison, and showing a mistaken view of the law, rather than a malicious purpose, the plaintiff cannot recover.'"

[2] Let us examine the entire article appearing in the Eastland Daily Telegram, in the light of the authorities, to determine whether the use of the word "perjury" in the article was libelous. The article states the nature of the charges made against appellee. It discloses that the basis of the entire complaint was an affidavit made in connection with the sale of a stock of merchandise under the Bulk Sales Law. The very language of the article excludes the idea that appellee had been charged by complaint with false swearing growing out of the transactions described therein, and in addition thereto had been charged with the offense of perjury growing out of other transactions not described. It is doubtful whether many persons who read the article knew the legal distinction between false swearing and perjury. To those persons, if any, to whom false swearing and perjury conveyed the same meaning, no harm resulted to appellee by the addition of the word "perjury," because it is the universally recognized rule in actions for libel that words are to be taken in the sense that they are understood by the reader. But, disregarding that consideration, it is undoubtedly true that any reader of the article who knew the distinction between false swearing and perjury knew, by reading the entire article, that the offense with which appellee was charged was false swearing and not perjury. The newspaper correctly described the charge, but did not correctly label it. To apply the figure of speech employed in one of the quotations above, the article itself furnished the antidote for the poison therein contained. We conclude that the statement in the article to the effect that appellee had been arrested on a charge of perjury, when construed in connection with the entire article and in the light of the facts, is not actionable at all.

The next question for determination is whether that portion of the article which states, in substance, that appellee was held in jail in lieu of a $1,000 bond was libelous as a matter of law.

[3] Libel is defined in article 5430 of the Revised Statutes 1925. This article reads:

"A libel is a defamation expressed in printing or writing, * * * tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury. * * *"

Since the term is fully defined in the statutes, no other definition can be considered in determining whether the publication is

libelous. Taber v. Aransas Harbor Terminal Ry. Co. (Tex. Civ. App.) 219 S. W. 860; 36 C. J. 1152, § 18.

[4] The article spoke the truth in stating that appellee had been arrested, but was untrue in stating that he had been lodged in jail and was being held in lieu of bond. The question presented is: Did the untrue portion of the statement, when construed in connection with the article as a whole, tend to injure appellee's reputation and thereby expose him to public hatred, contempt, or ridicule? Is it an issuable fact about which reasonable minds could differ as to whether a false statement that one was unable to make bond tended to injure his reputation? If so, the jury and not the judge should decide whether the false statement is libelous. In some instances we think the issue might be a jury question; but in this instance the article disclosed that the complaint was filed in the town where appellee had lately conducted a mercantile business. We believe the statement that appellee was unable to make a $1,000 bond in a community where he had lately conducted a business conveyed to the mind of the average reader (and that is the test) the implication that he was a man of low standing in the community or that he was evidently guilty of the offense charged. To state that one was placed in jail and held in lieu of bond in the very community where he was known causes such person to suffer more or less injury in addition to that suffered by reason of his arrest. Regarding this we do not believe there is ground upon which reasonable minds could differ, and we therefore conclude that the trial judge did not err in instructing the jury that such statement was libelous as a matter of law.

The contention of appellant that the evidence raised the issue of fact to be determined by the jury, as to whether appellee had been lodged in jail on the occasion mentioned in the news item, is overruled. We hold that the uncontradicted evidence shows that he was not lodged in jail.

[5] The next important question for decision is with reference to the charge of the court as to what matters should be taken into consideration in arriving at a verdict. If this were a case in which the entire article was libelous per se, we think the charge in this regard substantially correct. But, taking into consideration the fact that the real essence of this article was that appellee had been charged with the atrocious crime of swearing that certain facts were true which were not true, and knowing that by far the greater part of the damage suffered by appellee was on account of the truthful part of such publication, we have come to the conclusion that further and additional instructions should have been given by the court to the jury.

Evidence in this cause shows that appellee's business fell off; that business relations were broken off by a wholesale house with which he had been dealing; that the public whom he met after the article was published appeared to act differently toward him to what they had prior to its publication. With all this evidence before the jury, and with no instruction from the court directing them to separate the injuries resulting from the truthful portion of the article from those resulting from that portion which was untrue, it is manifest that, in estimating appellee's damages, they considered damages for which appellant could, in no sense, be liable. It is a well-settled rule that, where plaintiff in a personal injury case is suffering from a disability or infirmity not caused by the negligence of the defendant in the particulars alleged in the petition, the court should take care to charge clearly, fully, and affirmatively that the plaintiff is entitled to recover only to the extent that his infirmity was increased or aggravated by defendant's negligence. 17 C. J. p. 1074, § 378; St. Louis Southwestern Ry. Co. of Texas v. Johnson, 100 Tex. 237, 97 S. W. 1039; G. C. & S. F. Ry. Co. v. McMannewitz, 70 Tex. 73, 8 S. W. 66; Ft. Worth & D. C. Ry. Co. v. Morrison (Tex. Civ. App.) 139 S. W. 884; St. Louis Southwestern Ry. Co. v. Hall (Tex. Civ. App.) 92 S. W. 1079.

The reason for the rule makes it clearly applicable in the instant case. Appellee was permitted to show all the infirmities from which he was suffering by reason of the publication of the entire article. The jury must certainly have understood from the charge of the court that he was entitled to damages commensurate with his injuries. For the greater portion of these injuries appellant was not responsible, because they resulted from the publication of the truth and were therefore damnum absque injuria. The court should have limited appellee's recovery to the increased or aggravated damages, and should have affirmatively instructed the jury so to do.

[6, 7] We overrule the contention of appellant that the article in question was privileged. Article 5432, R. S. 1925, defines the matters privileged for publication by a newspaper. The account cannot be held a "fair, true and impartial account of the proceedings in a court of justice, * * * or any other official proceedings authorized by law in the administration of the law." Nor could it be construed to be "a reasonable and fair comment or criticism of the official acts of public officials and of other matters of public concern published for general information." To our minds, it falls far short of coming within the definitions quoted, and cannot, therefore, be held to be privileged.

[8] But appellant insists that the article was qualifiedly privileged. This contention is also overruled. However much the reading public may be interested in news concerning law enforcement, or whatever may

be the duty of a newspaper to disseminate news thereof, these considerations can never be suffered to outweigh the duty which one person owes to another not to injure his good name by the publication of untrue statements concerning him.

We believe the views indicated render it unnecessary for us to discuss the various and sundry assignments based upon the sustaining of special exceptions to appellant's answer. The rulings on the admission and exclusion of evidence will likely not be invoked upon another trial, and for that reason need not be discussed in this opinion.

Appellee presents a number of cross-assignments, and requests that, in event this court should reverse and remand the cause, then consideration be given to his cross-assignments. It is not necessary to discuss the first seven of these cross-assignments, because our views with reference to the questions therein raised have been expressed in this opinion. These assignments are overruled.

[9] The eighth and ninth cross-assignments complain of the action of the trial court in admitting evidence of an offer to apologize and an apology made by an agent of appellant after the article had been published. We sustained these assignments. The action was for actual damages only, and a private apology for publishing the article could serve no other purpose than to show that the party offering it had no personal ill will towards appellee. This was immaterial matter.

[10] The cross-assignment complaining of the action of the trial court in excluding the testimony of appellee to the effect that he spent about $1,000 in making trips with a man with whom he had previously been dealing for the purpose of explaining away the effect of the libel complained of cannot be sustained. This proffered testimony was improper. Appellant could not have possibly foreseen these elements of damages; they were too remote and not a proper measure of damages.

[11] The eleventh and twelfth cross-assignments are sustained. These assignments complain of the admission by the trial court of testimony showing that one Sipe made statements to the effect that appellee should make appellant pay for the libel complained of. This man Sipe was a stranger to this transaction, and his statements should have been excluded, because not at all binding on appellee.

[12] The trial court did not err in excluding the testimony of appellee's witness Collins, to the effect that his impression from reading the article in question was that it was probably true that appellee was in fact guilty of the crime of perjury as stated in the newspaper. The newspaper did not state that appellee was guilty of the crime of perjury, and to permit the witness to construe the article to have such meaning and give his construction to the jury would be manifestly invading the province of the jury.

[13] Complaint is made of the action of the trial court in permitting appellant's agent and witness Frank Jones to testify, in substance and in effect, that in publishing the article complained of appellant had no ill will against appellee. This testimony would ordinarily not be admissible in a case where no exemplary damages are sought; but, since in this case appellee alleged in his pleadings that the article was published by appellant maliciously, we think it was not error for the trial court to permit appellant to deny that charge.

For the reasons indicated in this opinion, the judgment of the trial court will be reversed and the cause remanded.

### On Rehearing.

[14] One holding of this court in its original opinion seems to have been misunderstood by appellee. In his motion for rehearing, he seems to consider that we held his petition insufficient because in his petition he did not set out the entire news item appearing in the newspaper, but only such portions thereof as he considered libelous.

Our opinion did not discuss at all the question of the sufficiency of appellee's petition in the trial court. He had the right to declare on any portion of the article which he conceived to be libelous, but we did hold that by so doing he could not withhold from the court and the jury the entire news item; that, in determining whether or not the particular portion complained of was libelous, those words and phrases should not be considered separate and apart from their settings, but should be construed with reference to the entire news item.

The motion for rehearing has had due consideration, but, being of the opinion that a correct disposition was made of this cause on the original hearing, the motion will be overruled.